# FRANK C. BOSTOCK AND EDGAR M. NOEL *vs.* CONWAY W. SAMS, SOLOMON H. FREBURGER AND OSCAR LESER, JUDGES OF THE APPEAL TAX COURT OF BALTIMORE CITY.

*Invalidity of Municipal Ordinance Authorizing a Permit for a New Building to be Refused at the Discretion of a Municipal Agency— Charter Powers of Baltimore City to Regulate Buildings—Mandamus—Effect of New Charter on Existing Ordinances.*

An ordinance of Baltimore City provides that no person shall erect a new building in that city without first obtaining a permit therefor from the Appeal Tax Court, after filing a plat and description of the building, and that "no such permit shall be granted unless in the judgment of the said Judge of the Appeal Tax Court or a majority of them, the size, general character and appearance of the building to be erected will conform to the general character of the buildings previously erected in the same locality, and will not in any way tend to depreciate the value of the surrounding improved or unimproved property." In this case the petitioners' request for a permit to erect a designated building having been refused by the Appeal Tax Court they applied for a *mandamus* to compel its issue, alleging that they had complied with all the formalities prescribed by the ordinance and that the Appeal Tax Court had refused the permit on the ground that, in its opinion, the proposed building did not conform to the general character of the buildings in that locality and that it was to be used as a Zoo which use would tend materially to depreciate the value of the surrounding property. *Held*,

1st. That a citizen has a common law right to build upon his land in such manner as he chooses without regard to whether his building will conform to the general character of the buildings in that locality.

2nd That this right cannot be abridged by a municipal ordinance.

3rd. That there is no provision in the charter of Baltimore City which authorizes it to confer upon an agency like the Appeal Tax Court a power so vague and undefined in its scope and so arbitrary in its character as that contained in this ordinance.

4th. That the charter power to regulate buildings in said city is limited to regulations guarding against dangers arising from unsafe construction or from the use of inflammable materials, or some similar exercise of the police power.

5th. That the part of the ordinance conferring the discretionary power upon the Appeal Tax Court is void, but the remainder of the ordinance is valid, and that the *mandamus* asked for should be granted.

6th. That whether the use to which the proposed building may be put will constitute a nuisance or not, is a question not before the Court in this case.

The new charter of Baltimore City (Act of 1898, ch. 123) which continued in force, until repealed, all the then existing municipal ordinances, did not have the effect of giving validity to an invalid ordinance, but continued the existing ordinances with the same effect and no more as if the change in the charter had not been made.

Appeal from an order of the Court of Common Pleas (DEN-NIS, J.) dismissing the petition for a writ of *mandamus*.

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE SCHMUCKER and JONES, JJ.

*Edgar H. Gans* and *Wm. J. O'Brien, Jr.*, for the appellant.

By section 6 of the charter, it is provided that the Mayor and City Council shall have full power and authority. 1. To direct in what part of the city buildings of wood shall not be erected. 2. To regulate and establish the size of bricks that are to used. 3. To regulate, restrain or prohibit the erection of wooden or frame buildings within the present limits of the city. 4. To regulate the height, construction and inspection of all new buildings hereafter erected. 5. To regulate the alteration and repairs of any buildings already erected or hereafter to be erected in said city.

And by section 79, the Inspector of Buildings has the supervision of the construction of all buidlings erected in the city, and shall see that the building laws relating to the construction of all buildings shall be complied with.

Under these powers the Mayor and City Council by an ordinance of October 23rd, 1891, now codified in the Baltimore City Code, and validated by section 6 of the city charter, passed a great number of minute regulations, applicable to all persons, governing the erection of buildings in the city of Baltimore. We find no fault with these regulations. They are general laws applicable to all alike.

Such being the case, the question now arises, what right has the Mayor and City Council, after passing a general sys-

tem of regulations, governing the erection of buildings in the city of Baltimore, to place the whole subject in the unlimited discretion of a local board?

If the Appeal Tax Court has the right claimed to exist under section 28 of this ordinance then they have the right to say that in a neighborhood of two-story houses a three-story house cannot be built; that if the houses are twenty feet front the new building must also have twenty feet frontage; that a store or a theatre could not be built in a residential neighborhood; that certain architectural designs must be followed, etc. In a word, whether a building like the Stafford Hotel or the Equitable Building or the Continental Trust Building could be built would rest entirely upon the final determination of the Appeal Tax Court as to whether they conformed to the surrounding neighborhood in size, character, or general appearance. The whole improvement of the city in all its details would by this ordinance be at the absolute will of the Appeal Tax Court. For, be it remembered, when they refuse a permit on the ground that there is want of conformity with the surrounding neighborhood, their decree is final, and there is no appeal to any other tribunal. This is not regulation—such an ordinance cannot be called a law—it creates simply an autocratic despotism. Every man's rights in the improvement of his own property are not regulated by laws binding on all alike, but at the mercy of the tastes, opinion and fads of subordinate boards of the city.

This ordinance came up before JUDGE HARLAN shortly after its adoption. In the case of *Hampson* v. *The Appeal Tax Court*, in the Superior Court, he issued a *mandamus* ordering the issuance of a building permit by the Judges of The Appeal Tax Court, who had withheld it on the ground that the improvements contemplated would not comport with the general character of other improvements in the same locality, and would tend to depreciate values in the neighborhood. JUDGE HARLAN in his opinion said: "The Constitution of this State has guaranteed to every citizen the right of private property. It prevents private property from being taken without

compensation and says no man shall be deprived of life, liberty and property without due process of law. This means not only the right to own property, but to exercise all the powers of ownership. One of the ordinary incidents of ownership of property is that the owner shall use it as he sees fit, so long as he does not use it to create a nuisance. To say he shall not use it in one way, or only in a particular way, deprives him to that extent of the right to use his property. Because a rich man has improved his property in a certain way is no reason why his poor neighbor shall not improve his property in any other way, and improve it in his own way. It may be desirable to have handsome avenues in the city, but they cannot be secured by interference with the constitutional rights of citizens."

Whenever the absolute dominion of an owner over his property is restricted by ordinance, there should be a uniform rule of action provided, and not left to the arbitrary will of the governing authorities. This principle has the support of all the authorities : *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Balto.* v. *Radecke*, 49 Md. 217; *State* v. *Tenant* (N. C.), 14 S. E. Rep. 387; *Newton* v. *Belger*, 143 Mass. 598; *City of Richmond* v. *Dudley*, 28 N. E. Rep. 312; *May* v. *People*, 27 Pac. Rep. 1010; *Anderson* v. *City of Wilmington*, 40 Kans. 173; *In re Frazier*, 63 Mich. 396; *Barthet* v. *City of New Orleans*, 24 Fed. Rep. 564; *Sioux Falls* v. *Kirby*, 25 L. R. A. 621; *Winthrop* v. *N. E. Choc. Co.*, 62 N. E. Rep. 969; *Knowlton* v. *Williams*, 47 L. R. A. 316; *St. Louis* v. *Hill*, 21 L. R. A. 226 ; *Parker* v. *Com.*, 178 Mass. 199.

The case of *Commissioners of Easton* v. *Covey*, 74 Md. 262, is cited against us as conclusive. If the broad language of the opinion is regarded in itself, detached from the actual case before the Court, the contention of the appellee might be correct. But it is to be noted—1. That there the application was to build a frame stable. 2. That no general building regulations had been passed. 3. That the application was made to the same body that had the power to pass ordinances, and each decision might be regarded as establishing a new

regulation.    The broad language of this opinion is against the whole current of authority.

Rejection on ground that use of building would be a nuisance.    This point scarcely needs discussion.    Whether a certain use of property is a nuisance or not is a question of law which the owner of property always has the right to have decided by the judicial authority.    Certainly the mere declaration of a local municipal board could never be allowed to preclude a judicial investigation as to an alleged nuisance. *State* v. *Mott*, 61 Md. 306; 1 *Dillon, Municipal Corp.*, secs. 308–374;  *Yates* v. *Milwaukee*, 10 Wallace, 505; *City of Evansville* v. *Miller*, 38 L. R. A. 161.

Again, the allegation is, not that the building itself would be a nuisance, but that the use to which it was proposed to put it would violate the law of nuisance.    Evidently the Appeal Tax Court is not given the power, even by the ordinance in question, to determine the use to which a building is to be put, and especially not to determine that such use is contrary to law.    Even in injunction cases where it is the use of the structure which will create the nuisance, the *erection* of the building will not be enjoined.    *Wood on Nuisances*, sec. 796.

*Wm. Pinkney Whyte*, for the appellees.

The power to pass by-laws under the general clause does not enlarge or annul the power conferred by the special provisions in relation to their various subject-matters ; but gives authority to pass by-laws *reasonable in their character upon all matters* within the scope of their municipal authority and not repugnant to the Constitution and general laws of the State. The power to make by-laws, when not expressly given, is implied as an incident to the very existence of a corporation. The possession of this power depends upon the charter of the city, either as conferred by express terms or by necessary implication.    This power is clearly derived from the "general power to pass all ordinances necessary to give effect and operation to all the powers vested in the corporation of the city." *Code of Public Local Laws*, Art. 4, sec. 29; *Act of 1898*, ch. 123, sec. 3; *Mayor, etc., of Balto.* v. *Radecke*, 49 Md. 217.

These powers are usually styled police powers and regulations, and if any one is injured by their exercise it is *damnum absque injuria*, upon the principle that the safety of the people is the highest law, and that every owner of property must use it so as not to injure his neighbor or the community at large. 1 *Dil. on Mun. Corp.*, sec. 93; *Cooley's Cons. Lims.*, 573, 594 and 595; *Ford* v. *State*, 85 Md. 489.

It will be noted that the second objection of the petitioners is that at the time of the passage of said ordinance, there was no statute of the General Assemply of Maryland in force authorizing the passage of the above set forth portion of said ordinance, nor has the passage of said ordinance ever been ratified by any Act of the General Assembly of Maryland. This is erroneous and untenable. The conclusive answer to this is found in the Act of 1898, chap. 123, sec. 3 : "That all laws now in force relating or applicable to the Mayor and City Council of Baltimore or the City of Baltimore, and not included in this Act, and not inconsistent with said Act, and all ordinances of the Mayor and City Council of Baltimore now in force and not inconsistent with this Act shall be and they are hereby continued until changed or repealed, respectively, by the General Assembly of Maryland or the Mayor and City Council of Baltimore."

This has been recently referred to in *Mayor and City Council of Balto.* v. *Stewart*, 92 Md. 553.

The selection of the means and manner of exercising the power are confided to the sound discretion of the municipal authorities. *Meth. P. E. Church*, v. *Mayor, etc.*, 6 Gill, 400; *Harrison* v. *Mayor*, 1 Gill. 277; 1 *Dillon on Mun. Corp.*, sec. 58.

In this case the Mayor and City Council of Baltimore had adopted the requisite legislation. The manner of applying for a permit, the subsequent publication of the notice that such application has been made, the terms and conditions on which it will be granted, are fully set out and expressed in the ordinance referred to. The issue of the permit on the determination whether the erection of the proposed building or buildings will conform to the character of the buildings previously

erected in said locality, and will *tend to depreciate the value of surrounding property*, is left to the discretion of the Judges of the Appeal Tax Court. To what municipal agents could such discretion be better confided? *Appeal Tax Court, Charter*, secs. 146 and 147. See *Radecke* v. *M. & C. C. of Balto.*, 49 Md. 228; *State* v. *Mott.*, 61 Md. 300

Does the ordinance which the Mayor and City Council of Baltimore have passed upon this subject vest in the Appeal Tax Court the discretion to grant or refuse permits in any given case? The Court of Appeals in a like case have said: Yes. *Comms. af Easton* v. *Covey*, 74 Md. 266. The authority of those commissioners was that "such ordinances as they may deem necessary and beneficial to said town may be passed." *It is a reasonable regulation.* 1 *Dillon, Mun. Corp.*, secs. 316–319; *Harrison* v. *M. & C. C. of Balto.*, 1 Gill, 264. *Mayor, etc.*, v. *Radecke*, 49 Md. 228

Even if there had been no special statute authorizing or ratifying said ordinance, yet nevertheless, the same would have been valid and legal, and in no way unconstitutional, in that it does not deprive a citizen of Baltimore City of his property *without due process of law.* The petitioner, Mr. Bostock, has no right to complain. He is not an actual lessee. His lease for five years has never been signed by him, and its execution *is dependent upon his obtaining the mandamus and the issue of the permit.* He is in no position to argue that the refusal of the permit deprives him of his property without due process of law. He has no *property* of which he will be deprived. He has, merely, a contractual right, dependent upon a contingency.

The passage of the ordinance was simply in the exercise of the police power. *State* v. *Broadbelt*, 89 Md. 578.

The refusal of the Judges of the Appeal Tax Court to grant the permit applied for was clearly in the line of duty and in the exercise of a sound legal discretion, because the plans and specifications of the proposed building showed that it would not conform to the general character of the buildings already erected on Mount Royal avenue, the main approach to Druid

Hill Park, and because the erection of such a building as pro-
posed would tend to depreciate the value of surrounding prop-
erty. Nothing conduces more to the preservation of a healthy
judicial atmosphere than the reference from time to time to those
familiar and unchanging principles which lie at the root of certain
legal questions, and this Court has, in the recent case of *George
M. Upshur et als.*, v. *Mayor and City Council of Baltimore*, in
its opinion filed April 1st, 1902, (94 Md. 743), rendered sig-
nal service to the profession in marshalling these fundamental
principles in review upon that important branch of the law of
*mandamus.*

JONES, J., delivered the opinion of the Court.

This case originated in a petition for a *mandamus* filed in
the Court of Common Pleas of Baltimore City by the appel-
lants against the appellees to compel the latter to issue to the
former a permit to erect a building upon a lot situated at the
northeast corner of Mount Royal and Maryland avenues in
the city of Baltimore. The case will turn upon the powers
and duties of the appellees, composing the Appeal Tax Court,
a sub-department of the municipal government of Baltimore
City under the provisions of its charter, in respect to the issu-
ing of a permit of the kind applied for. These powers and
duties are defined in the following provisions of the ordi-
nances of the city now codified and appearing in the City
Code, (1893), in Article 50, as secs. 24, 25, 27 and 28 and
which read as follows :

Section 24 "It shall not be lawful for any person, without
a permit from the Appeal Tax Court, to erect within the
limits of the city any building upon a new foundation,
whether in connection with an existing building or not, or to
pull down any old building or part of a building to the ground,
and build upon the old foundation, or to put an additional
story upon any building or part of a building by increasing
the height of the walls : and any person or persons who may
build within the city of Baltimore shall be required to take
out a permit for each and every house he or they may pur-
pose to build."

Section 25. "All persons receiving permission for the erection of any special improvements from the City Council shall, before commencing the erection of the same, obtain the endorsement of the Appeal Tax Court on said permit."

Section 27. "Whenever application accompanied by the payment of the cost of the advertisement provided for in section 28 is made to the Judges of the Appeal Tax Court for a permit or permits to erect any new building or buildings on any street or avenue of the width of fifty feet or more, the person or persons making such application shall be required, before such permit or permits shall be granted, to file with the Appeal Tax Court a plat accurately describing the piece or parcel of ground to be improved, giving the front and depth thereof, its distance from the nearest established corner of a street, lane or alley, and the number of improvements (if more than one) proposed to be erected thereon; also an accurate description of the frontage, height, depth, material to be used in the proposed building or buildings and the general appearance and cost of same."

Section 28. "It shall be the duty of the Judges of the Appeal Tax Court to grant such permits on application, without charge, except as hereinbefore provided, and to keep a record of all permits issued; provided, that no such permit shall be granted unless in the judgment of the said Judges of the Appeal Tax Court, or a majority of them, the size, general character and appearance of the building or buildings to be erected, will conform to the general character of the buildings previously erected in the same locality, and will not in any way tend to depreciate the value of surrounding improved or unimproved property; and provided further, that before any such permit shall be granted, at least ten days notice by advertisement inserted in some daily newspaper shall be given by the Appeal Tax Court that application for such permit has been made. And before any permit shall be granted to erect any building or buildings within the limits of the city of Baltimore, the applicant shall first satisfactorily prove to the Judges of the Appeal Tax Court that provision has been made for such drainage as the topography of the ground requires.'

The petition for *mandamus* filed by the appellants alleged that the appellant, Frank C Bostock, had leased for a valuable consideration from a certain William P. Harvey, who was the owner thereof, the lot of ground which has been referred to, and was in possession thereof with authority from the owner to erect thereon the building for the erection of which a permit was applied for ; and that he had entered into an agreement with the appellant, Edgar M. Noel, to erect for a consideration a building on the said lot ; and that for the purpose of executing this agreement the said Noel had duly applied to the Appeal Tax Court for a permit to erect said building.   The petition then sets out the provisions of the ordinances of the city regulating the application for and the granting of permits for the erection of buildings within the city and shows upon its face that all of the requirements of the said provisions were complied with by the appellants in making application for the permit which they seek to have granted in this case.   The petition then shows that the appellees composing the Appeal Tax Court refused the application of the appellants for a permit to erect the building therein indicated and passed an order to that effect in which they assigned as reasons for their refusal, that the plans and specifications for the proposed building "presented to the inspector of buildings and examined by the Appeal Tax Court" did not in their opinion "conform to the general character of the buildings in the said locality," and that the use of the building proposed to be erected "will be for the purposes of a 'zoo ;' " among which purposes was "to show wild animals, in reality conducting a continuous circus upon one of the most beautiful streets in the city of Baltimore."   It also appeared from the petition that Mount Royal avenue, the street upon which the building was proposed to be erected was more than fifty feet in width.

The appellees in their answer admit all the allegations of fact of the petition except those contained in the first paragraph thereof, which were that the appellant, Bostock, had leased and was tenant in possession of the lot upon which the

building for the erection of which the permit was applied for, was to be erected, and had entered into an agreement with the appellant Noel, to construct a building thereon. These allegations they refused to admit and called for proof of the same. The defense made by the answer was in substance and effect that the appellees had a discretion as to the granting or refusing of the permit and were justified in their refusal thereof because the building for which the permit was applied for, "would not conform to the general character of the buildings previously erected in the same locality, and would tend materially to depreciate the value of the surrounding improved or unimproved property." The answer was demurred to and the demurrer was overruled. The petitioners then joined issue upon that part of the answer which did not admit the allegations of the petition contained in the first paragraph thereof, and demurred to all other parts thereof which demurrer being overruled the petitioners joined issue thereon "as far as said answer in any way denies the averment of facts contained in the petition."

The case was then tried before the Court without a jury. Testimony was taken and there was proof on the part of the appellants going to show that the appellant Bostock had, with the owner of the lot upon which the proposed building was to be erected, a contract founded upon a valuable consideration which gave him the right to erect a building upon said lot and that said Bostock had possession of the lot for that purpose if a permit could be obtained; and that he had entered into an agreement with the appellant Noel for a consideration to have a building erected thereon. At the conclusion of the testimony the petitioners offered a prayer to the effect that if the Court should find from the evidence. (1) "That on the 22nd day of October, 1901, the petitioner, Frank C. Bostock, was and now still is, the tenant in possession of the lot of ground mentioned in the petition, with authority from the owner thereof to erect thereon the building mentioned in said petition;" (2) "and that on said day the petitioner, Edgar M. Noel, as agent and builder for the petitioner, Frank C. Bos-

stock, applied for the permit mentioned in said petition;" (3) "That then under the pleading in this case the verdict must be for the petitioners." This prayer was refused by the Court to which refusal the petitioners excepted. The Court ordered that the writ of *mandamus* be refused and the petition therefor be dismissed. From this order the petitioners have appealed.

It will be seen from the course of the pleading and the nature of the defense relied upon by the appellees that the most important and the substantial inquiry involved in the case before us is as to what lawful discretion is given to the appellees to withhold a permit, upon application made, by virtue of the proviso in the ordinance of the city regulating the issuing of permits which is embodied in section 28 of the City Code and which reads as follows: "Provided, that no such permit shall be granted unless in the judgment of the said Judges of the Appeal Tax Court, or a majority of them, the size, general character and appearance of the building or buildings to be erected, will conform to the general character of the buildings previously erected in the same locality, and will not in any way tend to depreciate the value of surrounding improved or unimproved property." Treating this proviso as not being contained in the provisions of the ordinances relating to the granting of permits that have been recited, and assuming that the allegations of the petition for *mandamus*, in respect to the tenancy and possession of the appellant, Bostock, of the lot of ground mentioned in the petition as the site of the proposed building, to have been sufficiently proved, it having been admitted on the face of the pleadings that all the requisites and formalities prescribed by the ordinance to accompany an application for a permit to build had been complied with, it became the duty by the very terms of the ordinance of the Appeal Tax Court to issue the permit upon the application of the appellants as made. What remained to be done therefore by the appellees would, upon the hypothesis stated, have become a plain duty and a mere ministerial act which they could not arbitrarily refuse to perform and upon such refusal *mandamus* would lie to compel the performance of the duty. *Brayshaw* v. *Ridout,* 79 Md. 454.

.Taking up now for consideration the defense set up by the appellees based upon the discretion with which they claim to be invested perforce the proviso which has been recited, the fundamental question to be determined is whether this proviso is a valid part of the ordinance under which the appellees were called upon to act, and as to this, the first inquiry is, was the corporation, the Mayor and City Council of Baltimore, empowered by any provision of its charter to prescribe the conditions contained in the proviso in the connection in which it occurs. As a guide to this inquiry we may very aptly quote from what was said by Mr. Dillon in his admirable work on Municipal Corporations in relation to the construction of the powers of such corporations: "The fundamental and universal rule which is as reasonable as it is necessary is, that while the construction is to be just, seeking first of all for the legislative intent in order to give it fair effect, yet any ambiguity or doubt as to the extent of the power is to be determined in favor of the State or general public and against the State's grantee." Then after saying that this is not so directly applicable to municipal as to private corporations he proceeds as follows : "But it is equally applicable to grants of power to municipal and public bodies which are out of the usual range, or which may result in public burdens or which in their exercise touch the right to liberty or property or as it may be compendiously expressed any common law right of the citizen or inhabitant." 1 *Dillon on Mun. Corp.*, p. 148, sec. 91, (4th ed.) Again at p. 394, sec. 317 of the same work it is said "since all the powers of a corporation are derived from the law and its charter it is evident that no ordinance or by-law of a corporation can enlarge, diminish or vary its powers."

The foregoing citations are made as a clear and terse statement of the rules and principles of law applicable to the case at bar and not because we think there is need that they should be fortified by citing authority. Now undoubtedly the proviso in the ordinance here under consideration attempts to confer powers that affect the citizen in his right of property and his common law right. It cannot be pretended that the

citizen has not the common law right to acquire title to a lot of land, qualified or absolute, in a city as elsewhere and to build upon, and improve it as his taste, his convenience or his interest may suggest or as his means may justify without taking into consideration whether his buildings and improvements will conform in "size, general character and appearance" to the "general character of the buildings previously erected in the same locality;" even though there might be those in whose "judgment" his so building might in *some way* "tend to depreciate the value of surrounding improved or unimproved property." Notwithstanding the delicate power conferred by the proviso in question—a power to control the citizen in the exercise of important and valuable rights of property, the power is conferred in the most vague and general terms and an unlimited and unregulated discretion is given to an agency of the city government thereunder. No standard is set up according to which this judgment is to be exercised; nor means provided by which it is to be instructed or controlled and the citizen is left helpless to question its exercise in any particular case. What is meant by the "general character of the buildings previously erected?" And what is there to define and fix this? What is to determine the locality within the bounds of which the conformity of building, provided for by the ordinance, is to be required? What is to be its extent and what its limits? What is the depreciation of property against which the ordinance seeks to guard? Is it a present and immediate depreciation, or is it to be a depreciation which may, in the judgment or opinion of the Appeal Tax Court, occur sometime in either a near or a remote future, and which in fact may never occur? A right to create power so vague and undefined in its scope, so entirely unrestricted in its exercise, and so essentially arbitrary in its character, designed to abridge important and valuable property rights of the citizen, if it can be conferred at all·upon a municipal corporation, ought to be found to be so conferred in very clear terms or by some necessary implication.

Nowhere in the charter of the city of Baltimore can it be

found that there is conferred upon the corporation, by any express legislative provision, the power implied in the ordinance under consideration. Nor can such power be deduced by any reasonable implication from any of the specific or general powers enumerated and granted in the charter. The general powers are found enumerated in section 6 of the charter as enacted by Act 1898, chap. 123. Without undertaking to quote at large this enumeration of powers granted, it may be affirmed of them that those which are therein contained to authorize the regulation of building within the city look to regulations to guard against dangers to arise from an unsafe construction of buildings; or from constructing them of inflammable materials; or in such manner as might prove offensive, or deleterious to health; or in a way to involve danger to other property or to life or limb. In other words they are powers which fall within the purview of what is known as the police power. The proviso under consideration has no reference to any of the objects specified or provided for in the authority given the corporation to make regulations as to buildings. It contains no suggestion that it was intended to provide for the public safety; nor to safeguard the health or morals of the community; nor to preserve public order; nor in any way to be promotive of any object which calls for the exercise of the police power. · Under sub-title Police Power of section 6 of the charter this power is conferred that the city may "pass ordinances for preserving order, and securing property and persons from violence, danger and destruction, protecting the public and city property, rights and privileges from waste or encroachment and for promoting the great interests and insuring the good government of the city." While thus a broad discretion is given the corporation to use the police power the nature of the power is clearly indicated in the terms and in the connection in which it is granted; and the nature of the objects and purposes, for which it is to be used, is pointed out. None of these objects or purposes can be subserved by compelling the citizen to conform a building which he may desire to erect, to the "general character" o

the building which his neighbor may, previously, have erected; nor to take into consideration whether, however lawful the character of his structure, or the use for which it is intended, may be, its erection, will in the uncontrolled opinion of a designated agency of the corporation, *"in any way tend"* to depreciate the value of property in an undefined locality.

It is further provided in section 6 of the charter sub-title "Welfare and Other Powers" that the city may pass "such ordinances as it may deem expedient in maintaining the peace, good government, health and welfare of the city of Baltimore." This, in effect, is but a repetition of the grant of the general power which has just been referred to as contained in sub-title "Police Power" of this same section and does not further enlarge the scope of the powers of the corporation. Under this general power the municipality, acting within the limits of legitimate corporate authority, and to carry out and make effective its lawful powers, may pass ordinances prescribing general regulations applicable alike to all citizens, and by which each may regulate his conduct and know his rights and his duty as a member of the corporation ; but it is not consistent with any express or implied power that is to be found in the municipal charter that any individual, or any agency of the corporation should be invested with the unrestrained and unregulated power and authority to say, in each particular case as it arises, what the good government and welfare of the community may demand when dealing with, and undertaking the control of, the rights of the citizen in respect to the enjoyment and use of his property, as has been done by the provision in the ordinances of the city here brought under consideration if the same is to be held valid. The right of the corporation to confer such a power cannot therefore be derived from any implication.

Since we can find no legislative grant of authority to the city of Baltimore under its charter to enact the provision of municipal legislation upon which we have here to pass, either express or to be implied from any of the legitimate and recognized powers of the corporation we are constrained to hold

the same *ultra vires* and void. The case at bar bears a strong analogy to the case of *Baltimore* v. *Radecke*, 49 Md. 217, in which the question was as to the validity of a provision in an ordinance giving to the Mayor of the city the power to revoke permits that had been granted for the use of steam engines within the limits of the city. This Court found that ample power had been granted to the city to regulate the use of steam engines within the limits thereof; but that the character of power attempted to be exercised in enacting the provision of municipal legislation there drawn in question was not appropriate or legitimate to be implied for carrying the granted power into effect and the provision referred to was pronounced inoperative and void because it committed the doing of an act affecting valuable rights of the citizen "to the unrestrained will of a single public officer" and laid down "no *rules* by which its impartial execution" could be secured or "partiality or oppression prevented." The Court saying that if the officer chose to act only in particular cases, there was nothing "in the ordinance to guide or control him." The characterization of the power attempted to be exercised in that case and the reasoning of the Court in regard thereto apply with force and pertinency in the case at bar.

The case of *Baltimore* v. *Radecke, supra* and the case at bar differ from the case of *Commrs. of Easton* v. *Covey*, 74 Md. 262, much relied upon by the appellees in that the ordinance drawn in question in that case was one regulating the erection of new buildings within the town of Easton and the permit that had been refused was applied for to authorize the erection of a frame stable. There the ordinance looked to guarding the public safety and was held to come within the police power which had been conferred upon the corporation enacting the ordinance; and to be in consonance with the general powers and purposes of the corporation.

It is argued that though the authority to enact the provios of the ordinance here in question was not originally given by the Legislature, yet it was ratified and made effective by the 3rd section of the Act of 1898, ch. 123. This does not result

from a proper construction of the section of the Act of 1898 referred to.    In the first place only such ordinances as were not inconsistent with the Act were ratified and if this ordinance contained provisions that implied powers conferred upon the corporation which the Act did not intend to grant but withheld, then the ordinance was plainly inconsistent with the Act.    But the provision of the Act of 1898 which is here invoked as ratifying the ordinance in question has no reference to validating invalid ordinances; and was not intended to have such operation and effect.    It was merely intended to preserve the municipal status as to all laws and ordinances that might be in force at the date of the adoption of the charter provided by the Act of 1898, ch. 123, and to continue them in force, in the passing of the corporation from the control of the old charter to that of the new, with the same effect and no more, as if the change in the charter had not been made.

We have not thought it necessary to notice specially the ground of the refusal of the appellees to grant the permit applied for by the appellants based upon the alleged use which the building proposed to be erected was intended for.    The ordinance in question does not profess to give the Appeal Tax Court the right or power to go into such an inquiry upon application being made for these permits ; and no such inquiry is within the scope of their duty or their powers in that connection.    If the building which the appellants propose to erect shall be put to the use it is alleged to be intended for, and a question shall then be raised as to the legality of that use such question will then become one of interest to the community and of more serious import to those owning and making use of the property in question ; but it has no place in this discussion.

We may take up now the action of the trial Court upon the pleadings and upon the appellant's exception.    The demurrer to the whole answer of the appellees was properly overruled. The petition in its first paragraph alleged matters of fact which the answer did not admit and it was proper these allegations as to the tenancy and possession of the property and the right

of the appellants to build thereon should be sustained by proof
in order to show that the petition for *mandamus* was *bona fide*
and founded upon substantial right.    The second demurrer to
all that part of the answer not embraced in the denial it made
of the facts alleged in the first paragraph of the petition ought
to have been sustained for reasons appearing in the foregoing
expression of views.    The prayer of the appellants ought to
have been granted.    All the facts of the case except those set
out in the prayer had been admitted and upon a finding by
the Court of the only facts in issue the appellants were en-
titled to a finding in their favor.    The proof showed that they
had acquired for a valuable consideration a right to build upon
the lot described in their application for a permit, and had
authority from the owner of the lot so to do ; and were in pos-
session of the same for the purpose of building upon it and
this was sufficient to entitle them to the permit.

In holding that part of the ordinance of the city upon which
the appellees relied for their defense, and which was specifically
quoted in stating this defense, void, the rest of the ordinance
is not affected thereby since it can have full effect as to its
general objects and purposes with this provision stricken out.
In the case of *Baltimore* v. *Radecke, supra*, as also in the case
of *Vansant* v. *Harlem Stage Co.*, 59 Md. 330, the ordinances
drawn in question were only avoided in part.    It follows from
the views expressed in the foregoing opinion of the Court that
the order of the Court below refusing the *mandamus* in this
case must be reversed.     .

> *Order reversed and cause remanded
> with costs to the appellants.*

(Decided June 19th, 1902.)     .