*Carey & Mullins,* for plaintiff.

*Billingsley, Clark & DeFord,* for defendant.

---

### REASONABLE BUILDING REGULATIONS.

[Circuit Court of Cuyahoga County.]

The Tenbusch Realty Company v. Myron B. Vorce, Inspector of Buildings for the City of Cleveland.

Decided, December 21, 1906.

*Building Laws—Reasonableness of—Requirement as to Dead Walls—Change of Plans after Permit is Granted—Revocation of Permit—Wire Glass Windows—Injunction.*

1. A building restriction which requires that all walls built adjoining interior property lines shall be "dead," or solid fire walls, with certain exceptions, is a reasonable regulation; and where it is discovered by the building inspector that the plans exhibited at the time be granted the permit have been changed in such a manner as to disregard this requirement, he is clothed with authority to revoke the permit and forbid the occupancy of the building.

2. Small iron frame wire glass windows placed in the upper stories of an interior wall of a building are in conflict with such a regulation, and injunction will not lie to restrain the building inspector from insisting upon obliteration of such windows.

Marvin, J. (orally); Wildman, J., and Henry, J., concur.

This case is here on appeal. The plaintiff, which is a corporation, is erecting a five-story brick building at northwest corner of Prospect avenue, S. E., and East Fourth street, S. E., in the city of Cleveland, and permission was obtained from the defendant, who is inspector of buildings, before the building was

begun. A large amount has been expended in the erection of the building, and it is now nearing completion. Unless restrained by the order of the court the defendant will revoke the permit and will prevent the completion under the present plans of the building, and the plaintiff prays that the defendant may be enjoined from revoking said permit and from interfering with the completion and occupancy of said building.

The defendant justifies his proposed revocation of permit and his interference with the completion of the building on the ground, that the plans of the building submitted to him at the time the permit was granted are not in accordance with the plans upon which the building is being constructed; that under the plans submitted, the building could have been erected without any violation of the building code, so-called, provided by the ordinances of the city. That such code will be violated if the building is completed upon the plans which will be followed by the plaintiff, unless it is prevented.

The right of the defendant to revoke the permit is found in Section 2, Title 3, Part 5 of the code. It is said in the brief, and I find what is quoted in the brief as being the section, although I do not quite understand how it is made Section 2. It reads Section 2, but Section 2 under Title 3; and this one marked Section 2 immediately follows Section 29. However, there is authority in the section under certain conditions for an inspector to revoke. The section reads:

"When the work for which any building permit was issued is not being performed in conformity to the detailed statement, plans or specifications upon which such permit was issued, it shall be the duty of the inspector of buildings to notify the owner or owners, or his or their agent, in writing, that the work is being constructed in violation of the permit," etc.

And then it proceeds to say that if they do not change the plans so as to make them conform to the plans of the building as shown at the time the permit was granted, the inspector may revoke the permit.

The section of the code which it is said, and which it is conceded, will be violated by the completion of the building now proposed by plaintiff, is Section 27 of Title 29, which reads:

"No buildings now or hereafter erected shall be altered or enlarged to encroach upon the minimum required space reserved for light and ventilation or for fire protection purposes, either on the same or on adjoining premises. All walls built adjoining interior property lines shall be 'dead,' or solid fire walls, except when built in conformity with Section 6, and any such wall having window or other openings in conflict with the aforesaid Section 6 or Section 8, shall, under the provisions of this code, be deemed an encroachment upon the aforesaid minimum required reserved space, but nothing in this section shall be so construed as to prevent an owner from enclosing any interior or outer line court by 'dead' walls along the lot lines, provided the measurements for such courts is taken from the inner face of such enclosing wall."

The Sections 6 and 8 referred to do not apply in any wise to such a building as is being erected here. One of the walls of this building adjoins an interior lot of land. The plans shown the defendant at the time this permit was granted showed this to be a 'dead' brick wall; that is, a brick wall without any openings. The plaintiff proposes to place windows in the upper stories of this building, these windows being small, the frame being of iron, the glass used being what is known as wire glass, being a mesh of wire upon which molten glass or molten material for the making of glass has been turned so as to make the glass throughout with the wire meshes. They are to be placed upon pivots and may be turned in and out. The contention of the plaintiff is not that such windows will be as effective to check fire as a dead wall would be, but that they are practically as effective for that purpose.

It is urged by the plaintiff in a brief filed today that it would be impossible to make any walls that would be so absolutely fireproof as that no danger could exist from conflagration. And the result, as shown by the fires in San Francisco recently and in Baltimore a few years ago, undoubtedly show this to be true. The evidence shows that the best windows that can be devised for protection against fire are the windows which the plaintiff here proposes to use, notwithstanding that to put in these windows is to violate this section of the code.

Plaintiff says that the ordinance is unreasonable and that the court may, therefore, hold it a nullity; that such regulations

may be prescribed by the council as would justify such holding by the court is abundantly established by the authorities. Some of these are cited and quoted from in plaintiff's brief. French on Police Power, Section 142 (63); *Bushtrat* v. *People.* 185 Ill., 133; *Colon* v. *Fiske,* 153 N. Y., 188; 98 Cal., 173, I will not stop to read.

In *Deming* v. *City,* 22 C. C., 1, this court held that a regulation purporting to be a police regulation passed by the city was so unreasonable as to be a nullity.

The question then to be considered is, whether this ordinance was so unreasonable as that it may be treated as a nullity and void. It ought not to be so held unless it is clear that it is a power in excess of the police power granted to a municipality.

Attention is called by counsel for defendant to the case of *Bostock* v. *Sams,* 93 American State Reports, 394, and especially to the notes in that case. The notes are very full and very instructive. Note 2, page 406, is as follows:

"Of course, the authority to enact and enforce building regulations can be sustained only on the ground that it is a part of the police power. This power may be exercised directly by the state, or its exercise may, in proper cases, be delegated to cities and other municipal corporations, and in every case where the statute relied upon purports to authorize the imposition of the regulation, the question is, whether it is a legitimate exercise of the police power. While the decisions upon the subject are too infrequent to be relied upon with confidence, we apprehend that here, as elsewhere, certain limitations upon the exercise of the police power exist and must be respected, among which are that the regulation in question must not be arbitrary in its character, must be one which the courts will not judicially notice to be unnecessary, and must have a tendency to promote the public welfare or safety. The principal case presents, it is true, only the question of whether the ordinance was one the power to enact which had been conferred upon the municipality assuming to enact it, but we think the reasoning of the court to be equally applicable to general statutes upon the subject, and hence that it may be safely affirmed that a building regulation, however enacted, must not unnecessarily interfere with rights of property, and if it assumes in any manner to regulate the location, dimensions, appliances, or material of buildings on the property of private proprietors, it must be declared unconstitutional, un-

less its enactment can be defended on the ground that it is necessary for the protection or preservation of the public health or safety.''

Note 6, page 409, reads:

''Regulations intended to promote the public health, safety, or morals, and reasonably adapted to those purposes, are within the police power and may be enforced when enacted by the state legislature or by municipal corporations whose charters or other grants of authority give them power to enact local regulations upon these subjects.'' Citing a great number of authorities.

As already said, the question in this case is, Was this regulation a reasonable one? It seems to us to be a reasonable regulation; a regulation well calculated to protect against danger from fire, and that any violation will be to increase the dangers from fire. It is urged that certain other provisions of this code are inconsistent with this. That one may construct buildings which would be equally dangerous by having them built about a court. It would hardly do to say that this is unreasonable because there is some other section of this code that is unreasonable. We think this is reasonable, and it applies to all parts of the city. But it is said that that is one of the facts that make it unreasonable. It seems to us to be reasonable. If these windows are placed in the building, the building on the adjoining property is but two stories high, while this is five stories high, it would be much more likely to communicate in case of fire to the adjoining building than if this were a dead wall. One of the objects of windows is to have ventilation; that they shall be so hung as to be capable of being opened; if opened and a great conflagration comes on, it would be much more likely to communicate to the adjoining building through the windows than if it were a dead wall.

We have, therefore, reached the conclusion that the petition must be dismissed.

*White, Johnson, McCaslin & Cannon,* for plaintiff.
*Baker, Wilcox, Payer & Carey,* for defendant.