CITY OF SAN ANTONIO et al. (GREEK ORTHODOX SOC. AND CHURCH OF ST. SOPHIA, Intervener), v. ZOGHEIB.

No. 1241.

Court of Civil Appeals of Texas. Eastland.

March 2, 1934.

Rehearing Denied April 6, 1934.

T. D. Cobbs, Jr., W. C. Davis, and Jack Davis, all of San Antonio, for appellants.

R. F. Spencer and A. J. Lewis, both of San Antonio, for appellee.

FUNDERBURK, Justice.

Alexander Zogheib, owner of a vacant lot in San Antonio, made application to the city commissioners for a permit to erect thereon a drive-in filling station. The application was in due form, and accompanied by approved plans and specifications. There was no covenant running with the land which prohibited the operation of a filling station thereon, and the lot was located in an area in which such filling stations were not prohibited. The application was made in conformity to a city ordinance, and the permit refused under authority thereof, the applicable provisions of which read as follows: " * * * The city commissioners may, in their discretion, approve the location of the filling station at that place, or they may, in their discretion, refuse a permit for the location of the filling station at that place, if in their opinion the location, plans and specifications do not conform to this ordinance, *or that the safety, the health, the comfort, the convenience, the order, or the good government of the city will be adversely affected by the granting of said permit.*" (Italics ours.) The resolution of the city commissioners refusing to grant the permit recited that such action was based upon "consideration * * * of the fact that a large number of school children are now, and in the future will be attending the Greek Church, a part of which is equipped specially for the accommodation of said school children of tender years, which said Church is immediately across the street from the said proposed drive-in filling station site and * * * the further fact that North St. Mary's Street accommodates a large amount of vehicular traffic, and that the cutting of curbing which

will be necessary for the proper construction of a drive-in filling station at that particular corner will necessarily tend to greatly inconvenience and endanger the public generally by reason of the traffic crossing said sidewalk into and out of such proposed drive-in filling station." The conclusion from the consideration of such facts was recited to be that "said commissioners * * * were of the opinion that if such proposed drive-in filling station were permitted to be erected upon such site the public safety, convenience, good government of the city of San Antonio, and the welfare thereof will be materially affected thereby."

The suit, being an action for mandatory injunction, was brought by Zogheib against the city of San Antonio and the proper officers of said city to compel approval of the application, and the granting of said permit. The relief sought was predicated upon two grounds, viz., (1) that the defendants, in refusing the permit, acted willfully, arbitrarily, unlawfully, capriciously, and without cause, and (2) that said ordinance, and particularly that part of same purporting to authorize the city commissioners in their discretion to "refuse a permit for location of the filling station at that place if in their opinion the location, plans, and specifications do not conform to this ordinance, or that the safety, the health, the comfort, the convenience, the order, or the good government of the city will be adversely affected by the granting of said permit," is unconstitutional and void for various reasons set forth.

The defendants, in their answer, in addition to exceptions and denials, alleged facts designed to show that the erection and operation of the filling station as contemplated would constitute a nuisance.

The Greek Orthodox Society and Church of St. Sophia intervened, adopting the pleadings of the defendants, and made common cause with the latter in the contention that the filling station would constitute a nuisance.

The jury to whom the case was submitted on special issues found (1) that the city commissioners acted arbitrarily in refusing to grant the permit; (2) that the operation of the filling station on the plaintiff's property would not create traffic congestion; (3) that the children attending the parochial school would not be peculiarly attracted to the proposed station; (4) that while the noises created by the operation of the proposed station would be audible in the church, (5) that such noises would not annoy and disturb the people of ordinary sensibility attending religious services; and (6) that no obnoxious odors would be given off as the result of the operation of the station; and (7) that the congregation would not be disturbed thereby.

From the judgment rendered in accordance with such verdict, the defendants and intervener have appealed.

We shall consider first the question of the validity of the ordinance. If the ordinance is unconstitutional, the reasons why it is so will have special application to that part which undertakes to vest in the city commissioners the discretion to grant or refuse a permit if in their opinion any one or more of the following things will be adversely affected thereby, viz., (1) the safety, (2) the health, (3) the comfort, (4) the convenience, (5) the order, or (6) the good government of the city. The ordinance plainly purports to give to the city commissioners a discretionary power to grant permits and to impose a discretionary duty to do so. "A discretionary power involves an alternative power, i. e. a power to do or refrain from doing a certain thing." Bennett v. Norton, 171 Pa. 221, 32 A. 1112, 1116. "A power is discretionary, when it is not imperative; or, if imperative, when the time, or manner, or extent of its execution is left to the discretion of the donee. Generally the courts will not compel the execution of discretionary powers, nor review the discretion when exercised in good faith." Doe ex dem. Gosson v. Ladd, 77 Ala. 223 (quoted in Words and Phrases, First Series, vol. 3, page 2099). The ordinance in question, it will be observed, undertakes in one clause to grant unlimited discretionary authority to give a permit. Standing alone, this necessarily implies unlimited discretionary authority to refuse a permit. Then follows, however, a purported grant of discretionary authority to refuse a permit, which is not in terms unlimited, but is restricted to cases (among others) where, in the opinion of the commissioners, "the safety, the health, the comfort, the convenience, the order, or the good government of the city it will be adversely affected by the granting of a permit." Considering, as we think we should, the two parts of the ordinance together, we readily reach the conclusion that the power and duty to grant permits, and the power and duty to refuse permits are all alike discretionary powers and duties not wholly unrestricted, but subject to the same limitations. The heart of the problem presented by the facts of this case involves the question: Do such limitations preserve the constitutional rights of appellee?

■ Personal and property rights are involved. There is involved the right of appellee to make a lawful use of his own land and also the right to pursue thereon a lawful occupation. No question is involved of granting or withholding mere privileges as distinguished from legal rights. For the purpose of considering the constitutionality of the ordinance, we shall assume that the city commissioners refused the permit only for the reasons recited in the resolution as set out above. If we give full effect to such assumption, does it appear that appellee has been deprived of any constitutional right? His liberty of action, resulting in a denial of the proposed use of his property has undoubtedly been affected, precisely the same as if the city ordinance had expressly declared that no drive-in filling station shall be erected or operated, nor shall a permit to do so be granted, upon any street along which there is a heavy volume of traffic and within a radius of 150 feet from any church or school. Had the ordinance so provided, it would have been what is known as a "zoning ordinance," and its validity governed by the principles applicable to that character of ordinances. For a discussion of those principles, see Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387.

We shall assume for the present purposes, without so deciding, that had the ordinance contained the provisions which, as suggested, would have made it a zoning ordinance, and had further provided, as it does, that the city commissioners "may in their discretion refuse a permit for the location of the filling station at that place if in their opinion the location (i. e., location outside of first fire limits) plans and specifications do not conform to this ordinance," but had omitted the further clause "or that the safety, the health, the comfort, the convenience, the order or the good government of the city will be adversely affected by the granting of said permit," the ordinance would have been valid. We are, nevertheless, of the opinion that the part of the ordinance last above quoted and upon which the action of the commissioners in refusing the permit must depend for support, is unconstitutional and void. This conclusion is reached upon a consideration of what has been done under the purported authority of the ordinance, and what may be done, excluding, of course, any action which may be arbitrary, capricious, or fraudulent. The action of the city commissioners in refusing the permit, even if such action was not arbitrary or capricious, was a deprivation of property and privileges, other than by the due course of the law of the land, within the prohibitions of Const. art. 1, § 19, and was not due process of law, within the prohibitions of U. S. Const. Amend. 14. Such action constituted, in legal effect, a taking of property without the consent of the owner, and without compensation within the prohibitions of Const. art. 1, § 17, and U. S. Const. Amend. 14. Such action comprised the exercise of legislative, executive, and judicial powers by the same officers, within the prohibition of Const. art. 2, § 1.

■ If it be conceded that there exists such a relation between the operation of drive-in filling stations in a city like San Antonio, and the safety, health, comfort, convenience, order, or good government of such city, as under possible conditions would justify the prohibition of filling stations at particular locations, we look in vain to the provisions of this ordinance to ascertain what are such conditions, or where are such locations. No rule is prescribed by the ordinance for determining under what conditions the operation of such filling stations shall be deemed to affect adversely the safety, health, etc., of the city, or how the existence of such conditions shall be determined, or which, if less than all of said things that may be thus adversely affected, any particular condition does affect. The applicable principle of law is well stated in the editorial note in 12 A. L. R. 1436, as follows: "The generally accepted rule is to the effect that a statute or ordinance which vests arbitrary discretion with respect to an ordinarily lawful business, profession, appliance, etc., in public officials, *without prescribing a uniform rule of action*, or, in other words, which authorizes the issuing or withholding of licenses, permits, approvals, etc., according as the designated officials arbitrarily choose, *without reference to all of the class to which the statute or ordinance under consideration was intended to apply*, and *without being controlled or guided by any definite rule or specified conditions to which all similarly situated might knowingly conform*,—is unconstitutional and void." (Italics ours.) It is expressed in Ruling Case Law thus: "It is clear that if an ordinance is passed by a municipal corporation, which upon its face restricts the right of dominion which the individual might otherwise exercise without question, *not according to any general or uniform rule*, but so as to make the absolute enjoyment of his own depend upon the arbitrary will of the governing authorities of the town or city, it is unconstitutional and void, *because it fails to furnish a uniform rule of action* and leaves

the right of property subject to the despotic will of the municipal officers, who *may exercise it in accordance with some principle which it would not be within the constitutional power of the state to sanction* or even so as to give exclusive profits or privileges to particular persons." (Italics ours.) 19 R. C. L., p. 813, § 118.

We quote from Corpus Juris as follows: "Ordinances or regulations requiring permits from designated officials or boards in order to be valid *must contain the conditions under which applicant is entitled to his permit;* otherwise, such ordinances or regulations may amount to an unwarranted delegation of municipal powers." 43 C. J., p. 256, § 258. For other authorities upon the point see: Boyd v. Board of Council of City of Frankfort, 117 Ky. 199, 77 S. W. 669, 111 Am. St. Rep. 240; State of Washington v. Superior Court, 113 Wash. 296, 193 P. 845, 12 A. L. R. 1436; State ex rel. v. Charleston, 92 W. Va. 57, 114 S. E. 378, 27 A. L. R. 323; City of St. Louis v. Polar Wave, etc., Co., 317 Mo. 907, 296 S. W. 993, 54 A. L. R. 1082; Tarpey v. McClure, 190 Cal. 593, 213 P. 983; City of Seattle v. Gibson, 96 Wash. 425, 165 P. 109; City of Richmond v. Dudley, 129 Ind. 112, 28 N. E. 312, 13 L. R. A. 587, 28 Am. St. Rep. 180; City of Montgomery v. West, 149 Ala. 311, 42 So. 1000; Bostock v. Sams, 95 Md. 400, 52 A. 665, 59 L. R. A. 282, 93 Am. St. Rep. 394; Mayor, etc., of Hagerstown v. Baltimore & O. R. Co., 107 Md. 178, 68 A. 490, 126 Am. St. Rep. 382; Yick Wo v. Hopkins, 118 U. S. 356, 6 S. Ct. 1064, 30 L. Ed. 220; Matter of Tai Kee, 12 Haw. 164; Com. v. Maletsky, 203 Mass. 241, 89 N. E. 245, 24 L. R. A. (N. S.) 1168; State v. Mahner, 43 La. Ann. 496, 9 So. 480; City of Monticello v. Bates, 169 Ky. 258, 183 S. W. 555; Cicero Lumber Co. v. Town of Cicero, 176 Ill. 9, 51 N. E. 758, 42 L. R. A. 696, 68 Am. St. Rep. 155; Anderson v. City of Wellington, 40 Kan. 173, 19 P. 719, 2 L. R. A. 110, 10 Am. St. Rep. 175; Noel v. People, 187 Ill. 587, 58 N. E. 616, 52 L. R. A. 287, 79 Am. St. Rep. 238; Walsh v. City of Denver, 11 Colo. App. 523, 53 P. 458; City of Elkhart v. Murray, 165 Ind. 304, 75 N. E. 593, 1 L. R. A. (N. S.) 940, 112 Am. St. Rep. 228, 6 Ann. Cas. 748; Samuels v. Couzens, 222 Mich 604, 193 N. W. 212; Slaughter v. Post, 214 Ky. 175, 282 S. W. 1091; Bizzell v. Board of Aldermen of City of Goldsboro, 192 N. C. 348, 135 S. E. 50, 49 A. L. R. 755; Board of Trustees of Town of Bloomfield v. Bayne, 206 Ky. 68, 266 S. W. 885.

The failure of the ordinance to prescribe the conditions under which the operation of drive-in filling stations at particular places would be deemed to affect adversely either one or all, the safety, health, comfort, convenience, order, or good government of the city, necessarily leaves the determination of such conditions, as well as the facts of their existence, to the determination of the commissioners who in granting or refusing a permit are not performing a legislative function, but rather an executive function. The ordinance imposes upon them legislative, executive, and judicial powers, contrary to the constitutional provision (Const. art. 2, § 1) that "no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." It seems clear to us that the city commissioners in refusing a permit to appellee have exercised both legislative and judicial powers at least. They must have exercised legislative powers because no ordinance (the means through which the legislative department speaks) prohibits a filling station within any prescribed distance from a church or school, or upon any street upon which the traffic is heavy, or any combination of the two, yet by the action in question such prohibition has been accomplished. They must have acted in a judicial capacity since they had to determine the existence of relevant facts, and, in addition thereto, the effect thereof as expressed in the resolution, viz., that they "will necessarily tend to greatly inconvenience and endanger the public generally by reason of the traffic crossing sidewalks into and out of such proposed drive-in filling station." Such inquiry and determination involved, we think, the exercise of judicial powers of government. Under the ordinance in question, one commissioner may concur in the refusal of a permit because he entertains the belief that each such station adds a little to the sum total of unsafety or inconvenience of the people, that there are already enough filling stations, and hence to grant a permit for others would affect adversely, to some slight extent, the public safety and convenience. Another may be impelled to such action because of his belief that no filling station should be permitted in the near vicinity of a church. Still another who may think it is all right to grant a permit near a church may think that it will impair the public safety or convenience to grant one near a school. One commissioner may think that a given fact or state of facts involves a question of safety only; another of convenience or comfort, etc. The result is that no applicant for a permit knowing the law and all facts possibly applicable could

know in advance whether or not he was entitled to a permit. This fact, we think, is the decisive test which shows the invalidity of the ordinance. Assuming that appellee knew all the provisions of the ordinance, and all of the facts material to a consideration of whether he was entitled to a permit, and yet could not determine that he was or was not entitled to a permit, necessarily shows that the action of the commissioners in refusing the permit involved the law making as well as the judicial functions of government. An applicant for a permit could never know whether or not he had complied with the necessary requirements because the requirements themselves involve various matters of opinion. This obvious operation of the ordinance is not dependent upon any assumption that the city commissioners will act arbitrarily or capriciously, or from any improper motive. Who can say that a commissioner is acting arbitrarily or capriciously when he votes to refuse a permit because of the belief that there are enough filling stations already; that each one adds just a little to the sum total of unsafety or inconvenience; and that, therefore, to grant the permit would adversely affect the safety or convenience of the people? If such be the conception of safety or convenience sought to be protected, it is at least necessary that the legislative department of the city so enact. Judicial discretion cannot be conferred upon the officers of the city to determine so vital a question as a mere incident to passing upon an application for a permit. Does the ordinance in question have reference to the possible impairment of the safety or convenience which the driving of cars in and out of filling stations over sidewalks may to some degree involve? How can the operation of a drive-in filling station affect the health of the city, and, if such be possible, what are the circumstances under which it could be true? Could the ordinance have reference to that impairment of health resulting from possible collisions with automobiles passing over sidewalks in entering or leaving filling stations? What is to prevent one from being deprived of his property for such reason alone? How could public convenience be affected by the operation of drive-in filling stations? Would not a commissioner's action in voting to refuse a permit be within the terms of the ordinance if based upon the consideration that pedestrians on their way to market in a hurry would have to stop and wait upon cars passing in and out of the station over the sidewalk, and thereby be inconvenienced? Could the city, or the Legislature itself, by the most formal and definite ordinance or statute thus prohibit the conduct of a lawful business merely to protect the inhabitants of a city from that small degree of inconvenience? It is to be doubted, but whether so or not, it is certainly true that the ordinance undertakes to vest in the city commissioners the discretion to do so.

Appellee was, by the action of the city commissioners, prohibited from operating a filling station on his own land, not because any law or ordinance so provided, but because of an *opinion* of the city commissioners that the safety, convenience, and good government of the city would be adversely affected. If that opinion was incorrect, appellee had no redress. It is not within the powers of the Legislature (and, therefore, of course, of the city authorities) to declare that a particular item of evidence shall preclude one from establishing his rights in opposition to it. It was, therefore, deduced in McFadden v. Longham, 58 Tex. 579, that a statute which undertook to make the certificate or opinion of an officer conclusive evidence determinative of a question involving confiscation of property, was void. But, such is precisely what the ordinance in question does. By a consensus of opinion of the several commissioners which may have been formed from a consideration of a great number and variety of facts, and possibly no two opinions based upon the same ground, the appellee has been prohibited from operating a filling station. Such, we think, is not in keeping with the theory of our government, which is that of a people ruled by law, the law being interpreted by one department, and executed by another. Such division and exercise of governmental powers will preclude one from being deprived of his property by the mere discretion of officers.

Although we consider the judgment as based upon less solid ground when resting upon the jury's verdict that the commissioners acted arbitrarily, we are not prepared to hold that the evidence is insufficient to support the judgment upon that ground. The jury was warranted in interpreting the evidence to show that the permit would have been granted but for the protest made by the church authorities. We cannot say that from this the jury was not warranted in concluding that the permit was denied, not because of any of the facts testified to by any of the witnesses except the fact that a protest was made, but solely because of the protest. If the action had no other support, it was arbitrary. Spann v. City of Dallas, supra.

The verdict of the jury was well supported wherein they found that the operation of the proposed filling station would not have constituted a nuisance.

 Counsel for appellee in argument to the jury, and while arguing that the action of the commissioners was arbitrary because of discriminations made said: "The plaintiff Zogheib was a poor tailor and could not obtain a permit for a filling station, but the Humble Oil & Refining Company, who had the great financial backing of the Standard Oil Company, could obtain a permit to operate a filling station directly opposite a church, which demonstrates the arbitrary act of the city commission." Objection was made to the argument and the court instructed the jury to disregard it in their consideration of the issues. The argument was entirely proper, as being within the record, except that part of same which referred to the Humble Oil Company as having "the grant financial backing of the Standard Oil Company." We do not believe that this reference in the argument was of the nature of those which cannot be cured by instructions to the jury not to consider same.

It is, therefore, our opinion that the judgment of the court below should be affirmed, which is accordingly so ordered.