## JOHN R. SPANN V. CITY OF DALLAS ET AL.

### No. 3090.   Decided November 2, 1921.

### (212 S. W., 513.)

1.—Cities—Building Regulations—Police Power.

An ordinance of a city prohibiting the construction of a business house within a residence district except on permit granted by consent of three-fourths of the property owners within a radius of 300 feet and in accordance with a design approved by the building inspector is invalid as being an unlawful interference with the right of the owner to make lawful use of his property.   (Pp. 353-360).

2.—Same—Ordinance—Authority to Enact.

Whether an ordinance prohibiting the erection of business houses in residence districts of a city can be enacted by the city without express legislative authority, and whether such authority can be drawn from the general provisions of the charter of the City of Dallas to protect life, health and property, etc., is questioned but not determined.   (P. 355).

3.—Ownership of Property.

Property in a thing consists, not merely in its ownership and possession, but in the unrestricted right of use, enjoyment and disposal, subject to the police power; but this will not be suffered to invade the fundamental rights of the citizen.   (Pp. 355, 356).

4.—Police Power—Retail Store.

The police power is founded on public necessity and can be invoked to abridge the citizen's right to use his private property as he chooses only as such use endangers the public health, the public safety, the public comfort or welfare.   Neither of these is threatened by the ordinary business of a retail store.   It is a lawful and ordinary use of property and not to be prohibited because repugnant to the sentiments of a particular class.   (Pp. 357, 358).

5.—Same—Nuisance.

An ordinary and lawful retail store cannot be pronounced a nuisance or treated as one by city ordinance.   If a nuisance it could not be rendered less so by consent of three-fourths of neighboring property owners.   Such use cannot be prohibited to satisfy a mere aesthetic sentiment or the taste of other property owners.   (Pp. 357, 358).

6.—Same—Architecture—Building Inspector's Approval.

The lot owner has a right to determine the architecture of his own residence or building.   It was not in the power of the city to permit his building only on the approval of his designs therefor by a building inspector exercising an arbitrary and unbridled discretion.   (P. 360).

7.—Cases Distinguished.

Sligh v. Kirkwood, 237 U. S., 52; Cusack Co. v. City of Chicago, 242 U. S., 526; and other decisions reviewed and distinguished. (Pp. 360, 361).

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Dallas County.

Spann sued the City of Dallas and others, and appealed from a judgment for defendants. On its affirmance by a divided court he obtained writ of error.

*Read, Lowrance & Bates*, for plaintiff in error.

A citizen has the right to make any use of his property which is not detrimental to the public peace, health or safety, and to erect any sort of structure thereon for the conduct of any business which is not a nuisance and which does not affect the public peace, health or safety. Business houses are useful and necessary in every civilized community, and they are in no way detrimental to the public peace, health or safety, nor have they ever been deemed nuisances, and any objection to their erection in residence sections of a city is necessarily grounded purely on aestheticism which in America has never been accepted as a basis for the exercise of the police power. Milliken v. City of Weatherford, 54 Texas, 388; City of San Antonio v. Salvation Army, 127 S. W., 860; 2 Dillon on Municipal Corporations, sec. 695; Freund on Police Power, sec. 181; in re Hong Wah, 82 Fed., 623; People ex rel. Lankton v. Roberts, 153 N. Y. Supp., 143; Willison v. Cooke, 130 Pac., 828, 44 L. R. A. (N. S.) 1030; State v. Whitlock, 63 S. E., 123, 128 Am. St., 670; Fruth v. City of Charleston, 84 S. E., 105, L. R. A., 1915 C, 981; Bran v. City of Chester, 61 Atl., 894; Boyd v. City of Frankfort, 77 S. W., 669; Calvo v. City of New Orleans, 67 So., 338; City of St. Louis v. Dreisoerner, 147 S. W., 998;St. Louis v. Dorr, 41 S. W., 1094, 46 S. W., 976, 42 L. R. A., 686; People ex rel. Friend v. City of Chicago, 261 Ill., 16, 49 L. R. A. (N. S.) 438; Byrne v. Maryland Realty Co., 98 Atl., 547; Haller Sign Works v. Physical Culture Training School, 249 Ill. 436, 34 L. R. A. (N. S.) 998; Curran Bill Posting Co. v. Denver 107 Pac., 261, 27 L. R. A. N. S., 544; Commonwealth v. Boston Advertising Co., 188 Mass., 348, 69 L. R. A., 817; Bill Posting Sign Co. v. Atlantic City, 7 N. J. Law, 72; People ex rel. Dilzer v. Calder, 85 N. Y. Supp., 1015.

To place the property of a citizen subject to the control of his neighbors in property holdings or the building inspector of the city, who are empowered to permit or refuse to permit its use for business purposes, as this ordinance undertakes to do, is tantamount to depriving him of his property without due process of law and to denying him the equal protection of the law. Constitution of U. S., 14th amendment; Constitution of Texas, Art. 1, secs. 19 and 28; Freund on Police Power, sec. 643; Eubank v. City of Richmond, 226 U. S.,

137; Yick Wo. v. Hopkins, 118 U. S., 356; Barthet v. New Orleans, 24 Fed., 563; Re quong Woo, 13 Fed., 229; Yates v. Milwaukee, 77 U. S., 497; Re Sam Kee, 31 Fed., 680; Stockton Laundry Case, 26 Fed., 611; Town of Greensboro v. Erenreich, 80 Ala., 579; Willison v. Cooke, 130 Pac., 828, 44 L. R. A. (N. S.) 1030; City of St. Louis v. Russell, 22 S. W., 470; People ex rel. Friend v. Chicago, 261 Ill., 16, 609, 49 L. R. A. (N. S.) 438; St. Louis v. Dorr, 42 L. R. A. 686; State ex rel. Omaha Gas Co. v. Withnell 110 N. W., 680, 8 L. R. A. (N. S.) 978; Ex parte Sing Lee, 96 Calif., 354, 31 Pac., 245, 24 L. R. A., 195; State v. Garibaldi, 44 La. Ann., 809; St. Louis v. Howard, 24 S. W., 770; Chicago v. Gunning System, 73 N. E., 1035, 70 L. R. A., 230; Bostock v. Sams, 95 Md., 400, 52 Atl., 665, 59 L. R. A., 282; State v. Tenant, 14 S. E., 387, 15 L. R. A., 423; Sioux Falls v. Kirby, 60 N. W., 156, 25 L. R. A., 621; Baltimore v. Radecke, 49 Md., 217; Newton v. Belger, 143 Mass. 598; State v. Fiske, 9 R. I., 94; Richmond v. Dudley, 129 Ind., 112, 13 L. R. A., 587; People v. Roberts, 153 N. Y. Supp., 143; City of Plymouth v. Schultheis, 135 Ind., 339; Clements v. McCabe, 177 N. W., 722.

Section 4 of the ordinance is so connected and interdependent in subject matter, meaning and purpose with the remainder of the ordinance that it can not be presumed that the Board of Commissioners would have passed the ordinance without this section and thereby imposed an absolute prohibition against the erection of business houses in residence sections of the city. Texas & P. Ry. Co. v. Mahaffey, 98 Texas, 392; Western U. Tel. Co. v. State, 62 Texas, 630; 30 Cyc., 976-978; Pollock v. Farmer's Loan & Trust Co., 158 U. S., 601; Poindexter v. Greenhow; 114 U. S., 270; Connolly v. Union Sewer Pipe Co., 184 U. S., 540; Spraigue v. Thompson, 118 U. S., 90.

*James J. Collins, Allen Charlton, Carl B. Calloway, C. F. O'Donnell,* City Attorney, and *Barry Miller,* Special Counsel, for defendants in error.

Said ordinance was passed in the lawful exercise of the police power of the City of Dallas; the powers conferred upon said city by the terms of said ordinance are neither unreasonable nor arbitrary; and the enforcement of said ordinance is within the constitutional exercise of the police power of the City of Dallas. Thomas Cusack Co. v. City of Chicago, 242 U. S., 526; St. Louis Poster Co. v. St. Louis, 249 U. S., 269; Reinman v. Little Rock, 37 U. S., 171; Welch v. Swasey, 214 U. S., 91; Ex parte Hadachack, L. R. A., 1916, B, 1248; City of Chicago v. Stratton, 35 L. R. A., 84; People Ex rel. Busching v. Ericson, L. R. A., 1915, D, 607; People Ex rel. Friend v. Chicago, 49 L. R. A., (N. S.) 438; Ex Parte Quong Wo, 118 Pac., 714; In re Kene Montgomery, 125 Pac., 1070; Hahser v. Chicago, L. R. A., 1916, D, 95; Hadacheck v. Sebastin, 239 U. S., 394; Lake Shore & M. S. Ry. Co. v. Ohio, 173 U. S., 285; Bacon v. Walker, 204 U.

S., 311; Chicago B. & O. Ry. Co. v. Illinois, 200 U. S., 561; Noble State Bk. v. Haskell, 31 Sup. Ct., 186; Sligh & Kirkwood, 237 U. S., 52; People ex rel. Kemp v. D'Oench, 111 N. Y., 359; People ex rel. Keller v. Village of Oak Park, 107 N. E., 636; Sharp and v. City of Seattle, 109 Pac., 1067; State ex rel. Moore Oil Co. v. Dunham, 124 N. E., 232; Smolensky v. City of Chicago, 118 N. E., 410; State ex rel. Krittenbrink v. Withnell, 40 L. R. A., (N. S.) 898; Lincoln Trust Co. v. Williams Bldg. Corp., 229 N. Y., 313; Biggs v. Steinway & Sons, 229 N. Y., 320.

The provision in said ordinance prohibiting the erection of a business building in a residence section, without the written consent of three-fourths of the property owners within a radius of three hundred feet, works no denial to a property owner of either due process of law or equal protection of the laws guaranteed by the 14th Amendment to the Federal Constitution. Cusack v. City of Chicago, 242 U. S. 526; City of Chicago v. Stratton, 35 L. R. A., 84; People ex rel. Busching v. Ericsson, L. R. A. 1915-D, 607, 105 N. E., 315; People ex rel Keller v. Village of Oak Park, 107 N. E., 636; Shepard v. City of Seattle, 109 Pac., 1067; State ex rel Moore Oil Co. v. Dauben, 124 N. E., 232; Smolensky v. City of Chicago, 118 N. E., 410; St. Louis Poster Co. v. St. Louis, 249 U. S., 269.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

The question in the case is the validity of an ordinance of the City of Dallas, prohibiting, under penalty, the construction of any business house within what the ordiance denominates a residence district of the City, except with the consent of three-fourths of the property owners of the district, and on the building inspector's approval of the design of the proposed structure.

The ordiance defines a residence district to be any part of the City where there are more dwelling houses than business houses within a radius of 300 feet from the place where any business house intended for the barter and sale of goods and merchandise of any description or for the conduct of any business, is sought to be constructed.

Any one desiring to erect such a business house at any place within the City outside the fire limits, as designated at the time of the enactment of the ordinance or as may be hereafter designated by ordinance, is by the ordinance required to apply to the Board of Commissioners for a permit for that purpose, showing the location of the proposed building. If the Board is satisfied that there are not more residences than business houses within a radius of 300 feet from the proposed site, "and that the applicant is entitled to such permit," then, under the ordinance, the permit shall issue.

If, however, the site of the proposed business house be within "a residence district," that is, a district containing more residences than business houses within a radius of 300 feet from the contemplated site, there must accompany the application the consent of

three-fourths of the property owners owning property within the district. In such event the permit shall issue, provided "that the building for which such permit is granted must be of a design approved by the building inspector."

Where, within "a residence district," there are two or more adjoining business houses which were erected prior to the enactment of the ordinance, and the proposed business house is to be constructed "adjoining, immediately contiguous to or in extension of an existing business house," then the consent of property owners as otherwise required is not necessary.

Violation of the ordinance is made a misdemeanor, subject to a fine of not less than $50 nor more than $200. Every act done toward the location and erection of a business house without the required permit, is made a separate offense.

The plaintiff owns a lot at the corner of Ross and Fitzhugh Avenues in the City of Dallas, fronting 80 feet on Ross Avenue, and within "a residence district" as defined by the ordinance. It was purchased by him for the purpose of erecting business houses upon it. As a residence lot it was worth at the time of the trial $4500; as a business lot, $8500. The ordinance was not in force at the time plaintiff contracted to purchase the lot in May, 1915. It was not enacted until July 19, 1915. Before purchasing the lot the plaintiff was advised by the City Attorney that there was no law prohibiting its use for store houses, but that one might be enacted. Early in June, 1915, the plaintiff sought a permit for the erection of his houses, but it was refused by the Commissioner of Streets and Buildings. He renewed his effort on July 14, by written application, stating that the proposed store houses were to front on Ross Avenue, to be of brick, one story in height, of artistic design, set back at least ten feet from the property line, to cost approximately $6500, and to be constructed in accordance with the laws of the City. His application was again denied. A few days later the ordinance was enacted.

The suit was one to compel the issuance of a building permit and to restrain the City and its officers from interfering with the plaintiff's erection of store houses on his lot. The ordinance was pleaded as the defense to the action.

A judgment for the defendants was affirmed and the validity of the ordinance sustained by a majority of the Honorable Court of Civil Appeals for the Fifth District, Associate Justice Talbot dissenting from the decision.

The ordinance takes no heed of the character of business to be conducted in the store house which it condemns. It disregards utterly the fact that the business may be legitimate, altogether lawful, in no way harmful and even serve the convenience of the neighborhood. Its prohibition is absolute. No business house of any kind,

for the sale of goods of any character, or for the conduct of any business whatsoever, is its command, shall be permitted within "a residence district" without the consent of three-fourths of the property owners of the district, and, in addition, the building inspector's approval of the design of the structure. Even if the necessary consent of the property owners be obtained, and though the building is to be one safe and substantial, yet, according to the ordinance, if its architectural design does not accord with the taste of the building inspector, its construction is no less positively interdicted. No rule, no standard, no regulation of any kind is given whereby the applicant may know to what particular design of building he must conform. If the design, whatever its merits, does not suit the inspector, it is within his uncontrolled power to prohibit the building.

The justification for this far-reaching municipal law, as urged on behalf of the City, is that it is but a rightful exercise of its police power, as conferred by a general charter provision granting it the authority to protect by ordinance "health, life and property," abate nuisances, preserve and enforce "the good government, order and security" of the City, and to protect "the lives, health and property" of its inhabitants.

Passing by the question as to whether the specific power to regulate the location of store houses—limiting rights of property secured to every citizen under the general laws of the State, may be deduced from any such general charter provision, or may be exercised by a city at all in the absence of express statutory or charter grant, (Pye v. Peterson, 45 Texas, 312, 23 Am. Rep., 608; People v. City of Chicago, 261 Ill., 16, 4 L. R. A. (N. S.) 438, Ann. Cases, 1915A, 292, 103 N. E., 609; Clements v. McCabe, 210 Mich., 207 177 N. W., 722), we will deal at once with what we consider the larger question in the case, namely: Whether under the authority of the police power the citizen may be denied the right to erect, and in effect the right to own, a store house in a residence portion of a city, for the conduct of a lawful, inoffensive and harmless business.

Property in a thing consists not merely in its ownership and possession, but in the unrestricted right of use, enjoyment and disposal. Anything which destroys any of these elements of property, to that extent destroys the property itself. The substantial value of property lies in its use. If the right of use be denied, the value of the property is annihilated and ownership is rendered a barren right. Therefore a law which forbids the use of a certain kind of property, strips it of an essential attribute and in actual result proscribes its ownership.

The police power is a grant of authority from the people to their governmental agents for the protection of the health, the safety, the comfort and the welfare of the public. In its nature it is broad and comprehensive. It is a necessary and salutary power, since without

it society would be at the mercy of individual interest and there would exist neither public order nor security. While this is true, it is only a *power*. It is not a *right*. The powers of government, under our system, are nowhere absolute. They are but grants of authority from the people, and are limited to their true purposes. The fundamental rights of the people are inherent and have not been yielded to governmental control. They are not the subjects of governmental authority. They are the subjects of individual authority. Constitutional powers can never transcend constitutional rights. The police power is subject to the limitations imposed by the Constitution upon every power of government; and it will not be suffered to invade or impair the fundamental liberties of the citizen, those natural rights which are the chief concern of the Constitution and for whose protection it was ordained by the people. All grants of power are to be interpreted in the light of the maxims of Magna Charta and the Common Law as transmuted into the Bill of Rights; and those things which those maxims forbid cannot be regarded as within any grant of authority made by the people to their agents. Cooley Const. Lim. 209. In our Constitution the liberties protected by the Bill of Rights are; by express provision, ''excepted out of the general powers of government.'' It is declared that they ''shall forever remain inviolate,'' and that ''all laws contrary thereto shall be void.''

To secure their property was one of the great ends for which men entered into society. The right to acquire and own property, and to deal with it and use it as the owner chooses, so long as the use harms nobody, is a natural right. It does not owe its origin to constitutions. It existed before them. It is a part of the citizen's natural liberty —an expression of his freedom, guaranteed as inviolate by every American Bill of Rights.

It is not a right, therefore, over which the police power is paramount. Like every other fundamental liberty, it is a right to which the police power is subordinate.

It is a right which takes into account the equal rights of others, for it is qualified by the obligation that the use of the property shall not be to the prejudice of others. But if subject alone to that qualification the citizen is not free to use his lands and his goods as he chooses, it is difficult to perceive wherein his right of property has any existence.

The ancient and established maxims of Anglo-Saxon law which protect these fundamental rights in the use, enjoyment and disposal of private property, are but the outgrowth of the long and arduous experience of mankind. They embody a painful, tragic history—the record of the struggle against tyranny, the overseership of prefects and the overlordship of kings and nobles, when nothing so well bespoke the serfdom of the subject as his incapability to own property. They proclaim the freedom of men from those odious

despotisms, their liberty to earn and possess their own, to deal with it, to use it and dispose of it, not at the behest of a master, but in the manner that befits free men.

Laws are seldom wiser than the experience of mankind. These great maxims, which are but the reflection of that experience, may be better trusted to safeguard the interests of mankind than experimental doctrines whose inevitable end will be the subversion of all private right.

The police power is founded in public necessity, and only public necessity can justify its exercise. The result of its operation is naturally, in most instances, the abridgment of private rights. Private rights are never to be sacrificed to a greater extent than necessary. Therefore, the return for their sacrifice through the exercise of the police power should be the attainment of some public object of sufficient necessity and importance to justly warrant the exertion of the power.

The public health, the public safety and the public comfort are properly objects of this high importance; and private rights, under reasonable laws, must yield to their security.

Since the right of the citizen to use his property as he chooses so long as he harms nobody, is an inherent and constitutional right, the police power cannot be invoked for the abridgment of a particular use of private property, unless such use reasonably endangers or threatens the public health, the public safety, the public comfort or welfare. A law which assumes to be a police regulation but deprives the citizen of the use of his property under the pretense of preserving the public health, safety, comfort or welfare when it is manifest that such is not the real object and purpose of the regulation, will be set aside as a clear and direct invasion of the right of property without any compensating advantages. Cooley Const. Lim., 248.

These established rules provide the test for the validity of this ordinance.

The ordinance is clearly not a regulation for the protection of the public health or the public safety. It is idle to talk about the lawful business of an ordinary retail store threatening the public health or endangering the public safety. It is equally idle in our opinion to speak of its impairing the public comfort or as being injurious to the public welfare of a community. Retail stores are places of trade, it is true, but as ordinarily conducted they are not places of noise or confusion. This is particularly true of small stores, such as it appears the plaintiff contemplated erecting. The ordinary trading that goes on within them is reputable and honorable, and can hurt nobody. According to common experince it is done in an orderly manner. It could disturb or impair the comfort of only highly sensitive persons. But laws are not made to suit the acute sensibilities of such persons. It is with common humanity—the average of the people,

that police laws must deal. A lawful and ordinary use of property is not to be prohibited because repugnant to the sentiments of a particular class. The ordinance visits upon ordinary retail stores, engaged in a useful business, conducted in an orderly manner, frequented and availed of by respectable people, and doubtless serving as a convenience to many, all the proscription visited upon common nuisances In the face of common knowledge that they are ordinarily respectable and peaceable places for the conduct of perfectly lawful pursuits evolved out of recognized customs and habits of the people as old as American life, the ordinance deals with them as though they had all the offensive character of a nuisance. But their treatment, in effect, by the ordinance as a nuisance does not make them so. It is a doctrine not to be tolerated in this country that either State or municipal authorities can by their mere declaration make a particular use of property a nuisance which is not so, and subject it to the ban of absolute prohibition.   Yates v. Milwaukee, 10 Wallace, 497, 19. L. Ed., 984.

If the presence of a store in a residence district of the City is a hurtful thing, so much so as to warrant its proscription by law, certainly it is not rendered less harmful by the fact that three-fourths of the property owners of the immediate area—many of whom may not reside there at all, consent to its presence. Yet, this ordinance while treating the presence of a store as so injurious to the public as to justify the extreme penalty of its absolute prohibition, recognizes that if a certain number of property owners of the district approve of its presence, all of its injurious properties will disappear.

This feature of the ordinance, in our opinion, reveals its true purpose. It reveals with reasonable clearness that its object is not to protect the public health, safety or welfare from any threatening injury from a store, but to satisfy a sentiment against the mere presence of a store in a residence part of the City.

It is doubtless offensive to many people for a store to be located within a given area where they own residence property. Others would possibly regard the store as a convenience. An aesthetic sense might condemn a store building within a residence district as an alien thing and out of place, or as marring its architectural symmetry. But it is not the law of this land that a man may be deprived of the lawful use of his property because his tastes are not in accord with those of his neighbors. The law is that he may use it as he chooses, regardless of their tastes, if in its use he does not harm them. Under the Common Law and in a free country a man has the unqualified right to erect upon his land non-hazardous buildings in keeping with his own taste and according to his own convenience and means, without regard to whether they conform in size or appearance to other structures in the same vicinity, even though they may tend to depre-

ciate the value of surrounding improved or unimproved property. Bostock v. Sams, 95 Md., 400, 59 L. R. A., 282, 93 Am. St., 394 52 Atl., 665.

It would be tyranny to say to a poor man who happens to own a lot within a residence district of palatial structures and his title subject to no servitude, that he could not erect an humble home upon it suited to his means, or that any residence he might erect must equal in grandeur those about it. Under his constitutional rights he could erect such a structure as he pleased, so long as it was not hazardous to others. It might proclaim his proverty; it might advertise the humbleness of his station; it might stand as a speaking contrast between his financial rank and that of his neighbors. Yet, it would be his "castle;" and the Constitution would shield him in its ownership and in its use.

If the citizen is not to be left free to determine the architecture of his own house, and the lawful and uninjurious use to which he will put it; if he is not to be permitted to improve his land as he chooses without hurt to his neighbors; if by law he is to be allowed to do these things only as officials or the public shall decree, or as may for the time suit the taste of a part of the community, the law might as well deal candidly with him and assert that he holds his property altogether at public sufferance. It might as well prescribe the kind of clothes he and his family shall wear and the sort of food they shall eat. Some people are as much offended by the clothes and diet of other people as they are by the style of their houses.

As a great judge has warned, "Such legislation may invade one class of rights to-day and another to-morrow, and if it can be sanctioned by the Constitution, while far removed in time, we will not be far away in practical statesmanship from those ages when governmental prefects supervised the building of houses, the rearing of cattle, the sowing of seed and the reaping of grain, and governmental ordinances regulated the movement and labor of artisans, the rate of wages, the price of food, the diet and clothing of the people, and a large range of other affairs long since in all civilized lands recognized as outside of governmental functions." In re Jacobs, 98 N. Y., 98, 50 Am. Rep., 636.

City ordinances of the same kind as this one, seeking to interdict the presence of stores within residence districts of cities, have generally been held unconstitutional by American courts, as an unwarranted invasion of the right of private property and not to be suffered under the guise of the police power. The People v. City of Chicago, 261 Ill., 16, 49 L. R. A., (N. S.) 438, Ann. Cases, 1915-A, 292, 103 N. E., 609; Willison v. Cooke, 54 Col., 320, 44 L. R. A., (N. S.) 1030, 130 Pac., 828; Calvo v. City of New Orleans, 136 La., 80, 67 So., 338; St. Louis v. Dorr, 145 Mo., 485, 42 L. R. A., 686, 68 Am. St., 575, 46 S. W., 976; 2 Dillion, Munic. Corp. (5Ed.) Sec. 695.

Like municipal regulations interfering with private property rights and founded upon purely aesthetic considerations, are universally held invalid. Haller Sign Works v. Physical Culture School, 249 Ill., 436, 34 L. R. A., (N. S.) 998, 94 N. E., 920; City of Passaic v. Patterson Bill Posting etc. Co., 72 N. J. L., 285, 111 Am. St., 676, 5 Ann. Cases, 995, 62 Atl., 267; Byrne v. Maryland Realty Co., 129 Md., 202, L. R. A., 1917A, 1216, 98 Atl., 547; Quintini v. Board of Aldermen, Bay St. Louis, 64 Miss., 483, 60 Am. Rep., 62, 1 So., 625; Commonwealth v. Boston Advertising Co., 188 Mass., 348, 69 L. R. A., 817, 108 Am. St., 464, 74 N. E., 601; Fruth v. Board of Affairs, 75 W. Va., 456, L. R. A., 1915-C, 981, 84 S. E., 105; State v. Stahlman, 81 W. Va., 335, L. R. A., 1918C. 77, 94 S. E., 497; Varney & Green v. Williams, 155 Calif., 318, 21 L. R. A., (N. S.) 741, 132 Am. St., 88, 105 Pac., 867; People v. Murphy, 195 N. Y., 127, 21 L. R. A., (N. S.,) 735, 88 N. E., 17; Freund on Police Power, Sec. 181.

A further vice in the ordinance is that even with the necessary consent of the property owners of the district, a business house may not be erected within it except upon the building inspector's approval of the design of the building. No rule or standard is given to govern the applicant in fashioning the design of his building or to govern the inspector in approving or rejecting it. The ordinance leaves it to the unbridled discretion of the inspector to disapprove the design, resulting in a refusal of the permit and the prohibition of the building. This leaves the right to construct the building subject to the arbitrary discretion of the inspector, and of itself renders the ordinance void. The very essence of American constitutions is that the material rights of no man shall be subject to the mere will of another. Yick Wo v. Hopkins, 118 U. S., 356, 30 L. Ed., 220.

Ordinances containing similar provisions have repeatedly been held unconstitutional. Mayor of Baltimore v. Radecke, 49 Md., 217, 33 Am. Rep., 239; Bostock v. Sams, 95 Md., 400, 59 L. R. A., 282, 93 Am. St., 394, 52 Atl., 665; City of Richmond v. Dudley, 129 Ind., 112, 13 L. R. A., 587, 28 Am. St., 180, 28 N. E., 312; City of Plymouth v. Schultheis, 135 Ind., 339, 35 N. E., 12; State v. Tenant, 110 N. C., 609, 15 L. R. A., 423, 28 Am. St., 715, 14 S. E., 387; City Council of Montgomery v. West, 149 Ala., 311, 9 L. R. A., (N. S.) 659, 42 So., 1000, 123 Am. St. Rep. 33, and Notes; And see Judge Davidson's dissenting opinion in the Broussard Case, 74 Texas Cr., 333, L. R. A., 1918B, 1091, Ann. Cases, 1917E, 919, 169 S. W., 665.

Two decisions of the Supreme Court of the United States are relied on by the Honorable Court of Civil Appeals in support of the validity of this ordinance. They are: Sligh v. Kirkwood, 237 U. S., 52, 59 L. Ed., 835, and Reinman v. Little Rock, 237 U. S., 171, 59 L. Ed., 900. Neither decision is authoritative upon the question

here. The first affirmed the validity of a state law directed at the shipment of citrus fruits which were immature and unfit for consumption. The law was readily sustainable as a regulation for the protection of public health. The other decision upheld the ordinance of a city making it unlawful to conduct the business of a livery stable; likewise sustainable as a regulation in the interest of public health.

Other decisions upholding the validity of city ordinances interdicting billboards in populous residence districts, such as Cusack Co. v. City of Chicago, 242 U. S., 526, 61 L. Ed., 472, L. R. A., 1918A, 136, Ann, Cases, 1917C, 594, relied upon by the defendants in error, are without any bearing here. In the Cusack Case the court but gave effect to the decision of the State Supreme Court (267 Ill., 344), which had found that billboards in such districts created danger from fire, because of the lodgment of combustible material against them, and that they also afforded protection to disorderly and lawbreaking persons.

Another decision strongly relied on by the defendant in error is In Re Opinion of the Justices, 234 Mass., 597, 127 N. E., 525. The decision sustains the validity of an ordinance segregating manufacturing and commercial buildings from homes and residences. But the ordinance, it appears, was passed under an express amendment to the Constitution of Massachusetts, granting to the legislature the express power to limit buildings, according to their use or construction, to specified districts of cities and towns. We have in Texas no such constitutional provision.

The ordinance here is, in our opinion, clearly unconstitutional and void. The judgments of the Court of Civil Appeals and District Court are therefore reversed, and judgment is here rendered for the plaintiff in error awarding him the relief he sought in the trial court.

*Reversed and remanded.*