

## THE ATTORNEY GENERAL
## OF TEXAS

August 19, 1988

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable John Vance
Criminal District Attorney
Dallas County
Services Building
Dallas, Texas   75202

Opinion No. JM-942

Re:  Whether  a  county  may
guarantee loans made to  low
and moderate income families
for housing purposes and re-
lated questions   (RQ-1337)

Dear Mr. Vance:

You inquire about  the powers  of a  county to  provide
financial assistance to low and moderate income families for
housing purposes.  You  first ask whether  the provision  of
financial assistance  to low  and moderate  income  families
for housing purposes constitutes  a "public  purpose" for  a
county.

This question involves two issues:  whether the  county
has express or implied  statutory authority to provide  such
financial assistance to  low and  moderate income  families,
and, if so, whether  such statutory authority is  consistent
with the Texas Constitutional provisions which require  that
public funds be spent for public purposes.  See Tex.  Const.
art. III, §§ 50, 51, 52; art. VIII, § 3.

Attorney General Opinion  JM-805 (1987) concluded  that
the provision of housing assistance  by a home rule city  to
low and  moderate  income  families  would  not  necessarily
violate the public purpose requirements of the constitution.
The  courts  have  accorded  great  weight  to   legislative
determinations of the  public purpose  to be  served by  the
provision of housing  assistance.  In  Housing Authority  of
City of Dallas v. Higginbotham,  143 S.W.2d 79 (Tex.  1940),
the Texas Supreme Court upheld the Housing Authorities  Law,
which  authorized  the  construction  of  low  rent  housing
projects for persons  of low income.   Local Gov't Code  ch.
392.  The law defines "persons of low income" to mean

families or persons  who lack  the amount  of
income that an authority considers  necessary
to live,  without  financial  assistance,  in

p. 4736

> decent, safe, and sanitary housing without overcrowding.

Local Gov't Code § 392.002(9).  The Supreme Court determined that the use to which the housing projects would be devoted was a public use.  143 S.W.2d at 85 (Tex. 1940).  The terms "low income" and "moderate income" do not, in the abstract, stand for precise amounts of income or a particular standard of living.  They are defined by evaluating income against expenditures for necessities, taking into consideration factors such as the costs of holding a job, family size, and local cost of living.  If an individual's earnings do not increase in proportion to inflation, his income may decline from "moderate" to "low" over a period of time without any decrease in the amount of dollars earned.  It is possible that persons and families who have a moderate income by some standards will meet the quoted test for "low income" persons and families because of local housing shortages or inflation in housing.

We will not address the constitutionality of every housing assistance program available for low and moderate income persons in the state.  These must be evaluated individually, taking into consideration the legislature's statement of purpose, the means of effectuating that purpose, and the definitions of low and moderate income.  We simply wish to make it clear that attaching the label "moderate income" to a person does not automatically remove him from the class of persons who may receive housing assistance consistently with consitutional provisions that protect public funds from expenditure for private purposes. See Attorney General Opinion O-2474 (1940) (A person need not be reduced to pauperism in the starkest meaning of the word before assistance may be extended to him under former section 11 of article 2351, V.T.C.S.).

We next consider whether the county has statutory authority to provide the kind of housing assistance you inquire about.  You ask whether a county may guarantee loans made to low and moderate income families for housing purposes, either by directly guaranteeing the loans or indirectly, by guaranteeing the payment of debt service on bonds issued by a housing finance corporation.

Housing projects for low income persons, slum clearance, urban redevelopment, and similar programs are within the general police power to provide for the public health, safety, and welfare.  7 McQuillan, Municipal Corporations §§ 24.563, 24.563b (3d rev. ed. 1981).  The

legislative findings in the Housing Authorities Law state a need for the exercise of the police power:

> [H]ousing conditions are responsible for an increase in and spread of disease and crime, are a menace to the health, safety, morals, and welfare of the residents of the state, impair economic values, and necessitate excessive and disproportionate expenditures of public funds for crime prevention and punishment, public health and safety, fire and accident protection, and other public services and facilities . . . .

Local Gov't Code § 392.003(2). See Spann v. City of Dallas, 235 S.W. 513 (Tex. 1921) (providing that police power authorizes government to protect the health, safety, comfort, and welfare of the public). The Texas Housing Finance Corporations Act also includes a finding that it will promote the public health, safety, morals, and welfare. Local Gov't Code § 394.002(b)(1).

The commissioners courts may exercise only such powers as the constitution or the statutes have conferred upon them. Canales v. Laughlin, 214 S.W.2d 451, 453 (Tex. 1948). Although the commissioners courts have broad discretion in exercising powers expressly conferred on them, the legal basis for any action by a commissioners court must be found in the constitution or the statutes. Id. Unlike home rule cities, counties have no general police power. Commissioners Court of Harris County v. Kaiser, 23 S.W.2d 840 (Tex. Civ. App. - Galveston 1929, writ ref'd); Attorney General Opinion JM-863 (1988); see Local Gov't Code § 54.004 (general police power of home-rule cities).

An examination of the relevant statutes persuades us that a commissioners court lacks authority to guarantee loans for housing purposes either directly or indirectly through guaranteeing the payment of debt service on bonds issued by a housing finance corporation.

The Texas Housing Finance Corporations Act provides a means of using tax-exempt financing to generate mortgage funds. Etter & Fraser, Housing Finance Corporations: The Texas Experience (A & M Real Estate Research Center, September 1986); see Local Gov't Code § 394.002(a). It authorizes the governing body of any city or county to approve the incorporation of public, nonprofit corporations which may issue bonds to defray costs of residential

development or the costs of purchasing or funding home mortgages for persons of low or moderate income. Local Gov't Code §§ 394.003(8)(11); 394.011; 394.037(a). The corporation may pledge all or a part of its revenues, receipts, or resources, including revenues or receipts received from residential development or home mortgages, to the payment of principle and interest on its bonds. Local Gov't Code § 394.037(b). Section 394.055 of the Local Government Code provides that bonds issued by a housing finance corporation are limited obligations of the corporation, payable solely from the revenue, receipts, and other resources pledged to their payment. The local government and the state are "not liable in any way regarding bonds issued by the housing finance corporation." Local Gov't Code § 394.055(b). Section 394.055 of the Local Government Code further states that:

> The bonds do not constitute, within the meaning of a statutory or constitutional provision, an indebtedness, an obligation, or a loan of credit of the state, the local government, or any other municipality, county, or other municipal or political corporation or subdivision of the state. The bonds do not create a moral obligation on the part of any of those governmental entities with respect to the payment of the bonds. <u>Those governmental entities may not make payments with respect to the bonds</u>. (Emphasis added.)

Local Gov't Code § 394.055(c). The underlined sentence prohibits cities and counties from paying debt service on bonds issued by a housing finance corporation. Accordingly, a county lacks authority to guarantee the payment of debt service on such bonds.

Nor does a county have statutory authority to guarantee mortgage loans made by a housing finance corporation to a low or moderate income person or family. The Texas Housing Finance Corporations Act defines "home mortgage" in part as

> an interest-bearing loan to a mortgagor, or a participation in such a loan, that is:
>
> . . . .
>
> (D)   except as provided by Section 394.906, guaranteed or insured by the United States, an

> instrumentality of the United States, or a
> private mortgage insurance or surety company
> to the extent the loan amount exceeds 80
> percent of the lesser of the appraised value
> of the home at the time the loan is made or
> the sale price of the home.

Local Gov't Code § 394.003(7). Under section 394.906 of the Local Government Code, a federal guarantee or home mortgage insurance is not required if the the housing finance corporation's bonds are guaranteed or insured by an agency, department, or instrumentality of the United States or by an insurance or surety company authorized to issue municipal bond insurance.

The Texas Housing Finance Corporations Act does not authorize a county to guarantee mortgage loans financed by a corporation established under that act. The legislature intended that such guarantees be provided by federal or private entities, and not by the city or county that established the housing finance corporation.

It is suggested that section 394.036 of the Local Government Code authorizes counties to guarantee mortgage loans made by housing finance corporations, but this provision merely authorizes such corporations to accept financial assistance from any source:

> A housing finance corporation may apply
> for and accept, on its own behalf or on
> behalf of another person, advances, loans,
> grants, contributions, guarantees, rent
> supplements, mortgage assistance, and other
> forms of financial assistance from the
> federal government, the state, a county, a
> municipality, or any other public or quasi-
> public body, corporation, or foundation, or
> from any other public or private source, for
> any of the purposes of this chapter.
> (Emphasis added.)

Local Gov't Code § 394.036(a). This provision gives such corporations broad authority to accept financial assistance, but it does not authorize the enumerated public and private entities to grant financial assistance.

In Attorney General Opinion JM-604 (1986), we held that a city could not designate a credit union as its depository, even though credit unions had express authority

to serve as depositories of the United States, its agencies or instrumentalities, any state, or any city, county, school district, municipal corporation, political subdivision, or other taxing authority of Texas or any other state. The statutes authorizing the city to place funds in a depository governed the kind of financial institution which the city could use. See also Attorney General Opinions JM-832 (1987); MW-534 (1982); MW-224 (1980); H-723 (1975).

State agencies must have legislative authorization to receive gifts and grants, since the conditions attached to gifts may be inconsistent with the powers and duties given that agency. Attorney General Opinions H-1180 (1978); O-4681 (1942). Section 394.036 of the Local Government Code makes it clear that a housing finance corporation may accept gifts from any source and may include "reasonable and appropriate terms, not inconsistent with the purposes of this chapter" in a contract for financial assistance. Local Gov't Code § 394.036(b).

We conclude that a county does not have express or implied authority under chapter 394 of the Local Government Code to guarantee mortgage loans made to low and moderate income people and families.

Nor may the county, in our opinion, guarantee mortgage loans under its authority to "[p]rovide for the support of paupers." V.T.C.S. art. 2351(6). The program authorized by chapter 394 represents an exercise of the state's police power far broader than the authority delegated to counties by paragraph 6 of article 2351, V.T.C.S. The legislature has provided in chapter 394 of the Local Government Code a means whereby a county may increase the availability of mortgage loan funds to low and moderate income persons in the county, subject to strict controls protecting its tax revenues. The county may not use the purpose clause in chapter 394 as authority for a different method of providing mortgage funds which ignores the controls imposed by that chapter. Cf. Letter Advisory No. 119 (1977) (Texas Opportunity Plan Fund established by article III, section 50(b), may not be used as a reserve fund for insuring student loans).

Since we conclude that a county does not have statutory authority to guarantee bonds issued by a housing finance corporation or mortgage loans made to low or moderate income people, we need not consider whether the provision of such guarantees would be a loan of the county's credit in violation of article III, section 52, of the Texas Constitution.

But see Attorney General Opinion H-120 (1973); Letters Advisory Nos. 119 (1977); 9 (1973) (providing that article III, section 52 does not bar lending of credit for a public purpose).

### S U M M A R Y

A county lacks authority to guarantee the payment of bonds issued by a housing finance corporation under chapter 394 of the Local Government Code or to guarantee loans provided to low and moderate income persons for housing purposes.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General