# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 7, 2025

Lyle W. Cayce
Clerk

_____

No. 24-50187

_____

Kristy Kay Money; Rolf Jacob Sraubhaar,

*Plaintiffs—Appellants*,

*versus*

City of San Marcos; Amanda Hernandez, *in her official capacity as Director of Planning and Development Services*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:23-CV-718

_____

Before Dennis, Southwick, and Engelhardt, *Circuit Judges*.
Kurt D. Engelhardt, *Circuit Judge*:[*]

The façade of a home in the Burleson Historic District of San Marcos, Texas bears the initial of a previous owner who was notoriously associated with the Ku Klux Klan. The current homeowners wish to remove this emblem but may not do so without permission from the city's historic commission. After the Commission denied their application requesting such

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

permission, the homeowners sued the city and a city official, alleging takings in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution and an unlawful exercise of the police power under the Texas Constitution. The district court determined that the takings claims were not ripe and then *sua sponte* dismissed all claims for failure to state a claim. We REVERSE.

## I.

## A.

Appellants Kristy Kay Money and Rolf Jacob Sraubhaar ("Moneys") purchased a home in the Burleson Historic District of San Marcos, Texas in 2017 and have lived there since. The home was previously owned by a man named Frank Zimmerman, who was notoriously associated with the Ku Klux Klan. Zimmerman attached a Juliet balcony with a wrought iron "Z" for "Zimmerman" to the front of the house. This Z remains there to this day.

The Moneys' home is not designated as a historic home. To the contrary, the Texas Historical Commission has rejected an application to designate it as such. Nonetheless, because the home is in a historic district, an ordinance in the San Marcos Development Code prohibits altering, relocating, or demolishing any visible portion of the property without first receiving a "certificate of appropriateness" from the San Marcos Historic Preservation Commission. To receive a certificate of appropriateness, the Moneys must submit an application to the city and pay a $165 fee.

The criteria used to determine whether a certificate of appropriateness is granted includes: (1) consideration of the effect of the activity on the historical, architectural, or cultural character of the Historic District; (2) compliance with unspecified "Historic District regulations"; (3) whether the property owner would suffer extreme hardship if the certificate is not issued; and (4) "visual[] compatib[ility] with other buildings

to which [the building] is visually related." If the Moneys remove an object from the visible façade of their property without a certificate of appropriateness, they could face criminal penalties and fines.

In March 2023, the Moneys decided that they want to remove the Z because it reflects neither their family values—given Zimmerman's purported Klan ties—nor their aesthetic preferences. As required by the Development Code, they filed an application requesting permission to remove it. The Commission denied the application at a hearing and via written notice.

The written notice provided that an applicant "may appeal a final decision of the Historic Preservation Commission on an application for a certificate of appropriateness to the Zoning Board of Adjustments within ten (10) days of the Historic Preservation Commission's action on the application." It also included instructions on how to submit this appeal. The Zoning Board's jurisdiction is limited to claims where "the record reflects the lack of substantial evidence in support of the decision of the Historic Preservation Commission." The Zoning Board "may not substitute its judgment for the judgment of the Historic Preservation Commission on the weight of the evidence," nor is it permitted to consider the constitutionality of the Development Code or the Commission.

B.

Given the limitations on the Zoning Board's authority, the Moneys concluded that an appeal would be futile. Instead, they filed this lawsuit against the City of San Marcos and the Director of Planning and Development Services, Amanda Hernandez, in her official capacity (collectively, the "City"). The Moneys asserted facial and as-applied takings claims under the Fifth and Fourteenth Amendments to the U.S.

No. 24-50187

Constitution, and facial and as-applied claims for unconstitutional exercise of the police power under Article I, Section 19 of the Texas Constitution.

The City responded to the lawsuit by filing a Rule 12(b)(1) motion to dismiss. It argued that: (1) the federal takings claims were not prudentially ripe and (2) the Moneys failed to exhaust administrative remedies before filing the Texas Constitution claims. A magistrate judge considered only half of the motion before opting to recommend *sua sponte* dismissal of the full complaint under Rule 12(b)(6) for failure to state a claim. The Moneys filed twenty-seven pages of objections to the magistrate judge's report and recommendation. The district court overruled the objections without comment and adopted the magistrate judge's report and recommendation in full.[1] The Moneys then timely filed this appeal.

## II.

### A.

We review a Rule 12(b)(1) motion to dismiss ruling *de novo*.[2] *Texas Tribune v. Caldwell County*, 121 F.4th 520, 525 (5th Cir. 2024).

### B.

We start with the Moneys' federal takings claims. The district court determined, as the City argues here, that these *per se* takings claims are not

---

[1] Because the district court adopted the report and recommendation in full and without further reasoning, we refer to the magistrate judge's report and recommendation as if it was authored by the district court.

[2] Because the City's prudential ripeness and failure to exhaust arguments both lack merit, *see infra* Sections II.B., II.C, we need not determine whether a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction was the proper vehicle to raise these arguments.

ripe because the Moneys did not appeal the Commission's denial to the Zoning Board, and therefore did not receive a final decision.

Under the *Williamson County* finality requirement, a *regulatory* takings claim is not prudentially ripe until the plaintiff has received a final decision from the relevant government unit as to how the regulation applies to the plaintiff's property.[3] *See Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193–95 (1985); *see also Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 88–89 (5th Cir. 2011) ("*Williamson County*'s ripeness requirements are merely prudential, not jurisdictional.") (collecting cases). We extended the finality requirement to *per se* takings claims.[4] *See Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 287 n.7 (5th Cir. 2012) ("The Supreme Court has only applied *Williamson County*'s finality rule to regulatory takings claims. . . . We have gone at bit further, applying the finality requirement to ordinary takings claims[.]" (citing *Urban Devs., LLC v. City of Jackson*, 468 F.3d 281, 294–95 (5th Cir. 2006))).

Determining whether a regulatory taking has occurred is not simple; that is why the Supreme Court created the finality requirement. *See Williamson Cnty.*, 473 U.S. at 191. As we have recognized before, this logic does not extend to *per se* takings:

> [T]he *Williamson County* final-decision requirement makes more sense when the taking alleged is a regulatory taking. . . . In Bowlby's case, however, her business permits were definitively taken away. While it is possible that, had she appealed . . . she

---

[3] *Williamson County* also established a state litigation exhaustion requirement. 473 U.S. at 193–95. The Supreme Court overruled that requirement in *Knick v. Township of Scott*, 588 U.S. 180, 206 (2019).

[4] The distinction between *per se* takings (also known as "ordinary," "physical," or "non-regulatory" takings) and regulatory takings is explained *infra* at Section III.B.1.

may have regained her permits, the actual taking is "irrevers-ible," unlike the application of a regulation.

*Bowlby v. City of Aberdeen*, 681 F.3d 215, 223 (5th Cir. 2012).

Nonetheless, circuit precedent requires us to apply the finality requirement to regulatory and *per se* takings claims alike. Even so, the Moneys' takings claims are prudentially ripe. First, the Moneys allege that the Ordinance constitutes a taking, both facially and as applied. But *Williamson County*'s finality test does not apply to facial challenges. *See Opulent Life Church*, 697 F.3d at 287. So the facial challenge is prudentially ripe.

As for the as-applied challenge, the district court seems to have conflated finality with exhaustion. The Moneys received written notice that their "request for a Certificate of Appropriateness to allow the removal of the wrought iron Juliette balcony on the second story of the front façade was denied by the Historic Preservation Commission on May 4, 2023." The notice informed them that applicants "may appeal a *final decision* of the Historic Preservation Commission on an application for a certificate of appropriateness to the Zoning Board of Adjustments within ten (10) days of the Historic Preservation Commission's action on the application." It also included instructions on how to submit this appeal. The Commission's denial satisfied the finality requirement. The Moneys were not obligated to exhaust their remedies by filing an appeal. Their as-applied takings claim is also prudentially ripe.

## C.

The City also sought dismissal of the Texas Constitution claims because the Moneys did not exhaust administrative remedies before filing this suit. The Moneys dispute that they were required to. While the City raised this issue at the district court, the court did not address it.

The City relies on Texas takings and "land use" cases to argue that the Moneys were required to exhaust administrative remedies by appealing the Commission's denial to the Zoning Board. It concedes that the only question under these cases is whether the administrative proceeding could have rendered the claims moot. *See, e.g.*, *City of Dallas v. Stewart*, 361 S.W.3d 562, 579 (Tex. 2012). Because appealing the Commission's denial would not have mooted the Moneys' Texas Constitution claims, we need not decide whether the caselaw requiring exhaustion would otherwise apply.

Had the Moneys appealed the Commission's denial, the only relief that they could have potentially received from the Zoning Board was approval to remove the Z. But that is not the only relief that the Moneys seek. They contend that the Ordinance's requirement that they "seek permission from the Commission before making any aesthetic changes to the visible portions of their home" violates the Texas Constitution, and they seek a permanent injunction barring enforcement of the Ordinance with respect to both the Z and future changes. So permission to remove the Z would not have mooted the Moneys' Texas Constitution claims, as they challenge the constitutionality of that very process. The Moneys were not obligated to exhaust administrative remedies by appealing the Commission's decision.

## III.

Now for whether the district court erred by *sua sponte* dismissing the Moneys' claims under Rule 12(b)(6) for failure to state a claim. We review both a decision to *sua sponte* dismiss and a Rule 12(b)(6) dismissal *de novo*. *Miller v. Sam Hous. State Univ.*, 986 F.3d 880, 888 (5th Cir. 2021); *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017).

## A.

A district court may *sua sponte* dismiss a complaint for failure to state a claim if "the procedure is fair." *Miller*, 986 F.3d at 888 (citing *Davoodi v.*

*Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014)). "Fairness" generally requires that the plaintiff had (1) notice of the district court's intention to dismiss the case on its own motion; and (2) an opportunity to respond and make his case. *Id.* at 888–89. Here, the magistrate judge recommended dismissing the claims *sua sponte*. The district court then provided the Moneys fourteen days to object to the report and recommendation. The report and recommendation provided the requisite notice, and the objection period provided sufficient opportunity to respond. The district court did not procedurally err by dismissing the Moneys' claims *sua sponte*.

## B.

To avoid Rule 12(b)(6) dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Terwilliger v. Reyna*, 4 F.4th 270, 280 (5th Cir. 2021) (internal quotation marks omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When determining whether a plaintiff's claims satisfy Rule 12(b)(6), our review includes documents that the complaint incorporates by reference. *Benfer v. City of Baytown*, 120 F.4th 1272, 1278 n.2 (5th Cir. 2024).

## 1.

We again start with the federal takings claims. The Moneys allege that the Ordinance, both on its face and as applied, is a *per se* taking in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution because it "mandates a physical occupation of property by unwanted objects for a public benefit without compensation." The district court only addressed the

Moneys' as-applied challenge. Because the district court acted *sua sponte*, we likewise limit our review to the as-applied challenge.[5]

The Takings Clause of the Fifth Amendment prohibits the taking of private property for public use without just compensation. U.S. Const. amend. V. It is incorporated to the states through the Fourteenth Amendment. *See Sheetz v. County of El Dorado*, 601 U.S. 267, 277 (2024). There are two types of federal takings claims: (1) "*per se* takings," which are acquisitions of property for public use, and (2) "regulatory takings," which are regulations that prohibit private uses of property. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 323–24 (2002). A taking's classification depends on "whether the government has physically taken property for itself or someone else—by whatever means—or has instead restricted a property owner's ability to use his own property." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021). If the former is true, a *per se* taking has occurred. *Id.* at 149–50. If the latter is true, analysis under *Penn Central Transportation, Co. v. City of New York*, 438 U.S. 104 (1978) is required to determine whether there is a regulatory taking. *Id.* at 149. The Moneys do not assert a regulatory takings claim, so the only question is whether they stated a *per se* takings claim.

In *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), the landmark *per se* takings case, a landlord discovered after purchasing an apartment building that the building had a cable and two cable boxes attached to its roof. *Id.* at 424. The building's previous owner had authorized a cable television servicer to install the cable and boxes. *Id.* at 421. A New York law enacted after the installation prohibited landlords from

---

[5] The district court independently erred by *sua sponte* dismissing the full complaint without addressing the Moneys' facial challenge.

interfering with, or demanding payment for, the installation of cable television facilities on their property. *Id.* at 421–23. The Supreme Court deemed that a *per se* taking. *Id.* at 432.

Here, the district court dismissed the Moneys' as-applied *per se* takings claim after concluding that the alleged facts are governed by *Penn Central*, not *Loretto*.[6] We disagree. We see no meaningful distinction between the allegations in the Moneys' complaint and *Loretto*. Both here and there, a government ordinance prohibited a building owner from removing an object that was already attached to the exterior of his building when he purchased it. Likewise, both the Z and the cable equipment were installed at a former owner's discretion, not pursuant to government action or regulation, but subsequently enacted public ordinances prohibited removal. The district court erred by *sua sponte* dismissing this claim under Rule 12(b)(6).

2.

The Moneys also seek a declaration that the Ordinance's certificate of appropriateness requirement, on its face and as-applied, violates Article 1, Section 19 of the Texas Constitution, and an injunction prohibiting the City from enforcing the requirement against them. They reason that the Ordinance regulates private property for purely aesthetic purposes in violation of Supreme Court of Texas precedent. The district court *sua sponte*

---

[6] The district court reasoned: "In *Maher v. City of New Orleans*, 516 F.2d 1051 (5th Cir. 1975), the Fifth Circuit applied the regulatory takings test of *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 107 (1978), to government regulation of historic preservation and found no unconstitutional taking when a landowner was denied permission to demolish a cottage in the French Quarter." This is plainly incorrect; we did not apply *Penn Central* in *Maher*. Indeed, as evidenced by the district court's citations, we decided *Maher* three years before the Supreme Court decided *Penn Central*. Regardless, *Maher* is not analogous simply because it also involved a historic preservation ordinance; the plaintiff in *Maher* did not allege that the government's refusal to let him remove the building on his property was itself a taking. *See Maher*, 516 F.2d 1065.

dismissed both the facial and as-applied challenges under Rule 12(b)(6) after concluding that (1) the Moneys relied on outdated precedent, and (2) even if purely aesthetic property regulations violate the Texas Constitution, the Moneys failed to state a claim.

i.

Regulations of property for purely aesthetic purposes have violated the Texas Constitution for over 100 years and still do. In 1921, the Supreme Court of Texas held that an ordinance prohibiting construction of commercial buildings in a residential district unless (1) three-fourths of the property owners in the district consented, and (2) the building inspector approved the design, was an unconstitutional exercise of the police power. *Spann v. City of Dallas*, 235 S.W. 513, 513, 518 (Tex. 1921). The ordinance's purpose was "not to protect the public health, safety or welfare from any threatening injury from a store, but to satisfy a sentiment against the mere presence of a store in a residence part of the City." *Id.* at 516. As the court explained, "purely aesthetic considerations" are not valid objects under the police power:

> An aesthetic sense might condemn a store building within a residence district as an alien thing and out of place, or as marring its architectural symmetry. But it is not the law of this land that a man may be deprived of the lawful use of his property because his tastes are not in accord with those of his neighbors. The law is that he may use it as he chooses, regardless of their tastes, if in its use he does not harm them. Under the Common Law and in a free country a man has the unqualified right to erect upon his land non-hazardous buildings in keeping with his own taste and according to his own convenience and means, without regard to whether they conform in size or appearance to other structures in the same vicinity, even though they may tend to depreciate the value of surrounding improved and unimproved property.

*Id.*

After the Supreme Court of Texas decided *Spann*, the Texas Legislature enacted the Zoning Enabling Act, which authorized cities to enact zoning ordinances. *See Lombardo v. City of Dallas*, 73 S.W.2d 475, 476 (Tex. 1934). In *Lombardo*, the court upheld a zoning ordinance that was enacted in accordance with the Zoning Enabling Act. *Id.* at 486. The court found that, unlike the ordinance in *Spann*, the ordinance was a valid exercise of the police power because it sought to keep the city's residents safe "by preventing concentration of population and congestion in the streets." *Id.* at 481. The court cited the new dangers of "[m]odern transportation facilities," which "ma[de] appropriate the exertion of the police power in a new direction or over a wider field than before." *Id.* While the court reached the opposite conclusion than in *Spann*, it twice endorsed *Spann*'s holding. First, the court distinguished this "comprehensive zoning plan" from the ordinance in *Spann*, which it called "fatally defective for various reasons." *Id.* at 478. And second, the court adopted Texas Jurisprudence's description of the "general rule" regarding the police power's application to private property, including that "[r]egulations interfering with private property rights are invalid if founded upon purely aesthetic consideration." *Id.* at 479 (quoting 30 Tex. Jur. § 58).

A zoning ordinance that includes aesthetic objectives is not always un-constitutional, however. In *Connor v. City of University Park*, the court upheld a city's refusal to grant the appellant a permit that would authorize him to remodel his single-family home into a dental office, and clarified that aesthetic considerations may be among the objects of a zoning ordinance:

> [T]he governing body of the City, in the exercise of its police power, was justified in prohibiting the use of premises in the residential district for the practice of dentistry, and that, in prohibiting such use, the governing body was authorized to give

No. 24-50187

> due consideration to the conservation of property values, the lessening of congestion in the streets, the prevention of undue concentration or overcrowding of the population, the appropriate use of land throughout the municipality, and to the preservation of attractive homes and home surroundings.

142 S.W.2d 706, 713 (Tex. App.—Dallas 1940, writ ref'd).[7] After addressing other bases for the zoning restriction being within the police power, the court stated: "Furthermore, in zoning, the aesthetic consideration is not to be ignored. Harmonious appearance, appropriateness, good taste, and beauty displayed in a neighborhood not only tend to conserve the value of property, but foster contentment and happiness among homeowners." *Id.* at 712. But because the object of the ordinance was not *purely* aesthetic, *Connor* did not overrule *Spann*. Restricting private property rights for purely aesthetic purposes is still impermissible.

Nonetheless, the district court declared *Spann* "generations out of date" given U.S. Supreme Court precedent that "has indicated that aesthetic purposes may be sufficient in themselves to justify police regulations." This conclusion was erroneous for two reasons. First, when interpreting the Texas Constitution, the Supreme Court of Texas is not bound by U.S. Supreme Court precedent interpreting the U.S. Constitution. *See generally* Jeffrey S. Sutton, *51 Imperfect Solutions: States and the Making of American Constitutional Law* (2018). Second, precedent has no expiration date. Where, like here, the Supreme Court of Texas has announced a proposition of Texas law, that decision is binding on courts applying Texas law unless or until the

---

[7] The subsequent history of "writ refused" designates this opinion's precedential value as equal to that of the Supreme Court of Texas's own opinions. *See Texas Rules of Form: The Greenbook* 111 (15th ed. 2022); *Ferreira v. Butler*, 575 S.W.3d 331, 335 n.29 (Tex. 2019).

No. 24-50187

Supreme Court of Texas abrogates or modifies it. *See Lubbock County v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002).

ii.

As an alternative basis for dismissing the Moneys' Texas Constitution claims, the district court concluded that the Ordinance restricts property for historic, rather than aesthetic, purposes. To reach this decision, the district relied on a video recording from the Commission hearing. The complaint's mention of the hearing did not authorize the district court to consider this evidence at the Rule 12(b)(6) stage. To conclude otherwise would mean that body camera or security footage that captured facts alleged in a complaint is always admissible at the Rule 12(b)(6) stage.[8] *Cf. Hodge v. Engleman*, 90 F.4th 840, 844–45 (5th Cir. 2024) ("Although the court may rely on documents that the pleadings incorporate by reference, Hodge did not attach the video evidence to the pleadings, nor did the pleadings refer to the videos sufficiently to incorporate them.").

For these reasons, the district court erred when it *sua sponte* dismissed the Moneys' Texas Constitution claims.

\*      \*      \*

The judgment of the district court is REVERSED. We REMAND for continued proceedings consistent with this opinion.

---

[8] "Even if a district court does not explicitly inform the parties that it was converting the motion to dismiss into a summary judgment motion, appellate courts *may* take the district court's consideration of matters outside the pleadings to trigger an implicit conversion." *Hodge*, 90 F.4th at 843–44 (emphasis added). Here, the district court was already acting *sua sponte* in dismissing the Moneys' complaint. We decline to convert the district court's *sua sponte* 12(b)(6) dismissal into a *sua sponte* summary judgment.